PATRICIA COOK *v.* WILLIAM C. BIELUCH, JR., ET AL.
(11236)

FOTI, LAVERY and HEIMAN, Js.

Argued June 8—decision released August 17, 1993

*Wesley W. Horton,* with whom were *Michael Taylor,* legal intern, and, on the brief, *Peter M. Ryan,* for the appellant (defendant).

*George J. Markley,* for the appellee (plaintiff).

HEIMAN, J. The defendant, William C. Bieluch, Jr.,[1] appeals from the judgment of the trial court dissolving his marriage to the plaintiff, Patricia Cook, challenging the financial orders and property distribution made incident thereto. The defendant claims that the judgment is fatally flawed because (1) the trial court

---

[1] Frederick F. Moryl, Jr., was also named as a defendant in the complaint. Moryl is not a party to this appeal and we use the term "the defendant" to describe the named defendant only.

abused its discretion in awarding counsel fees to the plaintiff by (a) failing to apply the statutory criteria and (b) awarding counsel fees where the plaintiff received no other financial awards, (2) the trial court's memorandum of decision improperly failed to set forth that the court applied a clear and convincing standard to the issue of forgery, and the evidence does not meet that standard, (3) the plaintiff failed to prove that a fraudulent conveyance occurred, and (4) if on appeal the issues regarding forgery and fraudulent conveyance are resolved in the defendant's favor, the plaintiff's action to quiet title must also fail. We affirm the judgment of the trial court.

The trial court found the following facts. The plaintiff and the defendant were married November 4, 1984. No children were born of this union. The plaintiff has two children, from a prior marriage and the defendant has three children from his first marriage. This marriage is the second for the plaintiff and the third for the defendant.

The plaintiff is a practicing psychologist who has an office in Bridgeport and another at her home in Darien. The defendant is a practicing attorney in Darien.

Other than the interest that each had in his or her own professional practices, the parties had little in the way of assets to be divided other than real property located at 41 Holly Lane, Darien.

Prior to the marriage of the parties, the plaintiff owned real property located at 89 Saddle Road, Stamford. On August 1, 1985, the plaintiff sold this property and the following day purchased the property at 41 Holly Lane in Darien. Subsequently, an addition was added to the house in order to provide space for the plaintiff's two children, the defendant's three sons and office space for the plaintiff. The Holly Lane property (property) was purchased for $295,000. The addition

was estimated to have cost approximately $156,800, bringing the total cost of the property to $452,000. Mortgages on the property totaled $309,000, and a real estate appraiser valued the property between $410,000 and $450,000. The defendant's contribution to the property was 15 percent. The plaintiff was also the owner of a 16 percent interest in real property located in Darien known as "Oberlander Place."

On April 24, 1987, a quitclaim conveyance was executed purporting to convey a one-half interest in the property on Holly Lane from the plaintiff to the defendant. The deed further purported to convey to the defendant the entirety of the plaintiff's interest in Oberlander Place. The deed recited as consideration "love and affection." The deed was recorded on October 31, 1989, and the transaction was claimed to be exempt from real estate conveyance tax. On the same day that the defendant recorded the deed, he conveyed, by quitclaim deed, all of his right, title and interest in the Holly Lane property and in Oberlander Place to the codefendant, Frederick F. Moryl, Jr. This deed was also recorded on October 31, 1989.

At the trial, the parties introduced evidence concerning the authenticity of the deed purporting to convey the plaintiff's interest to the defendant. An associate in the defendant's office who was a witness to the deed from the plaintiff to the defendant stated that the signature might be her own but she had no recollection of signing the deed as a witness. The other witness, who was employed as a secretary in the defendant's law office at the time of the alleged execution of the deed and who also acted as the notary, stated that her signature appeared on both the witness and notary lines of the deed, but she did not recall the plaintiff's signing the deed in the defendant's office.

The plaintiff testified that she had not executed the deed and that the signature on the deed purporting to be hers was a forgery. A handwriting expert also testified that the signature on the deed was not, in her opinion, the plaintiff's actual signature. The trial court found that the signature was not the plaintiff's and that the deed was a forgery.

In addition to the expert evidence that the purported signature was not the plaintiff's and the plaintiff's denial of execution of the deed, the trial court also found other evidence supporting its finding that the deed was a forgery. The court found that the defendant would lose any real property interest that he might have to internal revenue liens. The defendant had told the plaintiff on numerous occasions that he could not own any real estate in his own name. The trial court found that the defendant's answers to interrogatories were inconsistent with his claim of ownership of a one-half interest in the property. Further, the defendant himself testified that he recorded the deed in a fit of anger occasioned by the failure of the plaintiff's attorney to return a telephone call.

The plaintiff's own actions were inconsistent with her signing a deed relinquishing her rights in the property. The court noted that the plaintiff was relying on the equity in the property to meet the college expenses of her children. It also noted that the parties' relationship had deteriorated to the point that the plaintiff had consulted a lawyer about seeking a dissolution of the marriage and had also consulted a marriage counselor. Additionally, in August, 1987, the plaintiff increased the mortgage on the Holly Lane property by $100,000 and was the sole signatory on the note and the mortgage securing that note. The trial court found that on April 24, 1987, the plaintiff executed a note and mortgage deed on the Oberlander property in the amount of $550,000 and that the defendant did not execute

either document. The trial court found that it was unlikely that the plaintiff would execute a note secured by a mortgage on property that she had just conveyed.

The trial court rendered judgment dissolving the marriage between the parties. The court found that the defendant was at fault for the breakdown of the marriage.[2] It also found in the plaintiff's favor as to the second count of her amended complaint alleging the quitclaim deed to be a forgery. The court ordered the title to the property at 41 Holly Lane, and the Oberlander property[3] be placed in the name of the plaintiff. It found that the defendant never had any right, title or interest in those properties and that any conveyance from the defendant to Moryl is null and void. The trial court also found as a fact that the defendant had an earning capacity in excess of $25,000 per year.

The court rejected the defendant's request for periodic alimony, and ordered that no alimony be awarded to either of the parties.[4] The trial court also ordered that there be no assignment of estate pursuant to General Statutes § 46b-81 between the parties and that each would retain the items of personalty shown on his or her financial affidavit. The trial court also entered orders regarding payment of debts and indemnifications by the parties and further ordered that any interest accruing to the defendant as a result of a $30,000 investment with a certain individual or in any entity owned, managed or controlled by that individual shall

---

[2] The evidence before the trial court of the defendant's conduct relating to his misuse of alcohol as well as his acts of physical and sexual abuse against the plaintiff amply support the trial court's finding that the defendant was the cause of the breakdown of the marriage.

[3] The property known as Oberlander Place was foreclosed and thus no longer plays a part in this appeal.

[4] The trial court specifically found that considering the factors mandated pursuant to General Statutes § 46b-82, the defendant was not entitled to an award of periodic alimony. No claim on appeal implicates the trial court's decision in this regard.

be the sole property of the plaintiff. The trial court also extended a restraining order directed against the defendant and permitted the plaintiff to resume use of her name before marriage.

The trial court also ordered that the defendant pay to the plaintiff the sum of $50,000 as a contribution to counsel fees and that the payment be made at the rate of $500 per month for a period of 100 months commencing April 1, 1992, and payable on the first of each month thereafter until fully paid. The court ordered that the obligation to pay the counsel fees in full survived the death of either party or the remarriage of the plaintiff.[5] This appeal followed.

I

The defendant asserts that the trial court abused its discretion in awarding counsel fees to the plaintiff in two respects: First, he claims that the trial court failed to apply the statutory criteria contained in General Statutes § 46b-62,[6] and, second, he posits that the trial

[5] The trial court noted that the plaintiff had made a claim in the nature of an order of alimony to reimburse her for her attorney's fees which counsel represented exceeded $80,000. The trial court found that as of July 31, 1991, the plaintiff had incurred counsel fees in the amount of $33,500. The trial court took note of the number of motions, court appearances and trial days and the complexity of the issues in the case and found that the reasonable value of the services rendered by counsel was in the amount of $50,000. The trial court made an express finding that given the financial resources of the parties the denial of an award of counsel fees would undermine its financial orders, and awarded counsel fees to the plaintiff in the amount of $50,000. The trial court did not make an express finding that an order of alimony to the plaintiff was unwarranted.

[6] General Statutes § 46b-62 provides in pertinent part: "In any proceeding seeking relief under the provisions of this chapter . . . the court may order either spouse . . . to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82. . . ."

General Statutes § 46b-82 provides in pertinent part: "In determining whether [attorney's fees] shall be awarded . . . and amount of the award, the court shall hear the witnesses, if any, of each party . . . shall con-

court was precluded from entering an award of counsel fees because the trial court made no other financial awards to the plaintiff. Neither assertion persuades us.

The trial court in its thorough memorandum of decision clearly set out that in making its award of counsel fees to the plaintiff, it "has considered the provisions of § 46b-62 of the General Statutes and the factors of § 46b-82 of the General Statutes." In addition, the trial court specifically set out factual findings to support its determination that an ·award of counsel fees to the plaintiff from the defendant was warranted, including its finding as to the earning capacity of the defendant and his present living conditions.

Whether to allow counsel fees and in what amount calls for the exercise of judicial discretion. *Darak* v. *Darak,* 210 Conn. 462, 477, 556 A.2d 145 (1989); *Puris* v. *Puris,* 30 Conn. App. 443, 451, 620 A.2d 829 (1993); *Graham* v. *Graham,* 25 Conn. App. 41, 50, 592 A.2d 424, cert. denied, 220 Conn. 903, 593 A.2d 969 (1991). In determining whether to allow counsel fees, the court must consider the statutory criteria set out in §§ 46b-62 and 46b-82 and the parties' respective financial abilities. *Puris* v. *Puris,* supra. An abuse of discretion in granting the counsel fees will be found only if this court determines that the trial court could not reasonably have concluded as it did. *Fitzgerald* v. *Fitzgerald,* 190 Conn. 26, 34, 459 A.2d 498 (1983); *Puris* v. *Puris,* supra, 452.

Our review of the record indicates that the trial court specifically considered the statutory criteria and the

sider the length of the marriage, the causes for the . . . dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81 . . . ."

parties' financial abilities in determining whether to award attorney's fees and set out in its memorandum of decision the facts found to support its order. The defendant's assertion that the trial judge failed to apply the statutory criteria is simply not supported by the record. In light of the trial court's well supported findings, we cannot conclude that the trial court abused its discretion or acted unreasonably in awarding the plaintiff counsel fees in the amount and in the manner in which it structured the payments.

The defendant next posits that the award of counsel fees was barred as a matter of law because the trial court "found that no alimony was warranted." Thus, the defendant asserts, the trial court was precluded from making an award of counsel fees under his interpretation of our Supreme Court's decision in *Murphy v. Murphy,* 180 Conn. 376, 381, 429 A.2d 897 (1980). The defendant's reliance on the decision in *Murphy v. Murphy,* supra, is misplaced both legally and factually.[7]

The trial court stated that the plaintiff sought an order of alimony "to reimburse her for her attorney's fees which plaintiff's counsel state[d] exceed $80,000." The trial court went on to state that in its view, "[an order for attorney's fees] is in the nature of alimony and is not dischargeable in bankruptcy," relying on *In re Birdseye,* 548 F.2d 321, 323, 325 (10th Cir. 1977) (involving determination of nondischargeability of attorney's fees under Connecticut law). See *Murphy v. Murphy,* supra, 380. The trial court then proceeded to award counsel fees in the amount of $50,000.

---

[7] The trial court reviewed the defendant's claim for periodic alimony and found that he was not entitled to it. The trial court expressly found that the defendant had his own law practice, that he was living as a guest in another person's house, that he shared a bedroom with that person, and that he was at fault for the marital breakdown. The trial court also found that the defendant, with the trial behind him, could return to the practice of law and be able to support himself without the assistance of the plaintiff.

The defendant's assertion that the trial court found that no alimony was warranted is not supported by the record. The trial court did not state in its memorandum of decision that it had found that an award of alimony to the plaintiff was unwarranted, as the court did in *Murphy* v. *Murphy,* supra. Additionally, the court obviously found that an award of counsel fees required the same considerations as an award of alimony and that the debt created by an award of counsel fees would not be subject to discharge in bankruptcy.

Our analysis, however, cannot turn merely on the factual determination. The defendant asserts that an award of counsel fees was legally precluded because the trial court failed to award the plaintiff alimony as was required before an award of attorney's fees can stand.

In *Murphy* v. *Murphy,* supra, 381, our Supreme Court had before it a dissolution matter in which the trial court had stated that "its only concern was the assignment of property in accordance with what each party had contributed to the marriage." Our Supreme Court stated: "Nowhere in the memorandum of decision or in the record does it appear that the court considered the criteria listed in General Statutes § 46b-82 in awarding attorney's fees. If we consider the financial position of the plaintiff as required by § 46b-82, there was no basis for the awarding of attorney's fees. No alimony was awarded to the plaintiff. . . . In this instance, however, not only did the court fail to award alimony, but it also stated *'no alimony is warranted by the evidence.'* Where it is clear that the court considered the evidence and found no basis for alimony, and where the same evidence must be considered for an award of attorney's fees, if there is no indication in the memorandum of decision or the record of any evidence which relates to one and not the other, there is error in the award of attorney's fees." (Emphasis added.) Id.

Despite the defendant's assertion to the contrary, the trial court, here, unlike in *Murphy,* did not find an award of alimony to the plaintiff unwarranted. Also, unlike *Murphy,* the trial court did consider and made positive findings as to the basis for its award of counsel fees. These same findings would have supported an award of periodic alimony. Here, however, the trial court elected to make an award of counsel fees in lieu of an award of periodic alimony. "The decision to award attorney's fees is made independently of a decision to award alimony or to assign property in a dissolution action." *Fitzgerald* v. *Fitzgerald,* supra, 32–33. It is also within the trial court's discretion to order that funds to pay an award of counsel fees come out of an alimony award or property distribution. Id., 33 n.9. The trial court concluded that the factual predicate existed to support an award of counsel fees and set out these findings. The memorandum of decision and the record itself adequately set forth the necessary basis to support the award of attorney's fees.

The trial court's memorandum of decision clearly reflects that it properly weighed and considered the factors necessary to a proper resolution of the counsel fees issue including the resolution of the question as to whether to award counsel fees as such or to award alimony as a method of permitting the plaintiff to recoup her counsel fees. See *Graham* v. *Graham,* supra, 51. The trial court acted within its discretion to award attorney fees. The decision of the Supreme Court in *Murphy* v. *Murphy,* supra, is inapposite.

The defendant's attack on the trial court's award of attorney's fees is without merit.

II

The defendant next asserts that the trial court's failure to set out in its memorandum of decision that its

decision on the issue of forgery was based on a standard of clear and convincing proof is fatal to its finding that the deed was forged.

The mere fact that the trial court failed to refer explicitly to the standard of proof used by it in its determination of the fraud issue does not necessarily require reversal. If the memorandum of decision itself implies that the trial court applied the correct standard, we need not reverse the judgment on the technical ground that the trial court failed to state the standard of proof imposed. *Tessitore* v. *Tessitore,* 31 Conn. App. 40, 43, 623 A.2d 496 (1993); *Patrocinio* v. *Yalanis,* 4 Conn. App. 33, 36, 492 A.2d 215 (1985). Thus, the defendant's assertion that such omission is fatal is without merit.[8]

At oral argument, the defendant conceded that the issue regarding the failure of the trial court to set forth in its memorandum of decision the standard of proof that it required on the issue of fraud had not been properly preserved or briefed, and, therefore, he relies on the plain error standard. The unpreserved claim that the trial court's failure to include a statement in the memorandum of decision as to the standard of proof it applied is fatal to the case does not constitute plain

---

[8] We note that, pursuant to our authority under Practice Book § 4183 (1), we ordered the trial court to articulate the standard of proof that it applied in determining the issue of fraud. Practice Book § 4183 provides in pertinent part: "The supervision and control of the proceedings on appeal shall be in the court having appellate jurisdiction from the time the appeal is filed, or earlier, if appropriate, and, except as otherwise provided in these rules, any motion the purpose of which is to complete, correct or otherwise perfect the trial court record for presentation on appeal shall be made to the court in which the appeal is pending. The court may, on its own motion, modify or vacate any order made by the trial court, or a judge thereof, in relation to the prosecution of the appeal. It may also, for example, *on its own motion or upon motion of any party, (1) order a judge to take any action necessary to complete the trial court record for the proper presentation of the appeal* . . . ." (Emphasis added.) The trial court responded to our request for articulation by setting forth that the plaintiff had proven the allegations of fraud by clear and convincing evidence.

error where, as here, the memorandum of decision implies adherence to the correct standard and the trial court's articulation made in response to the order of this court confirms that it did apply the correct standard of proof.

The defendant's claim is without merit.

## III

The defendant next attacks the sufficiency of the evidence to support the trial court's finding of forgery and its finding that the defendant's transfer of the property to Moryl was fraudulent. We are not persuaded.

We need not decide whether a claim of forgery requires proof by clear, precise and unequivocal evidence, as do other forms of fraud; *Henry* v. *Klein,* 15 Conn. App. 496, 499, 545 A.2d 575 (1988); or by some lesser standard above a fair preponderance of the evidence, since the trial court has found that the plaintiff proved her case by the higher standard, and our review of the evidence supports the trial court's finding.

The defendant's quarrel with the trial court's finding that the deed was a forgery appears to turn on his contention that the court accepted the testimony of the plaintiff's expert and disregarded the testimony of his expert and other evidence including inferences that he claims arose out of the evidence.

The trial court stated unequivocally that it credited the testimony of the plaintiff's expert that the purported signature on the quitclaim conveyance was a forgery. Further, the trial court set forth in detail the additional factors that buttressed its finding that the deed was a forgery. "The sifting and weighing of evidence is peculiarly the function of the trier. [N]othing in our law is more elementary than that the trier is the final judge of the credibility of witnesses and of the weight to be accorded their testimony. . . . The trier

has the witnesses before it and is in the position to analyze all the evidence. The trier is free to accept or reject, in whole or in part, the testimony offered by either party." (Citations omitted; internal quotation marks omitted.) *Smith* v. *Smith*, 183 Conn. 121, 123, 438 A.2d 842 (1981). There was more than ample evidence, if believed, to support the finding by the trial court that the quitclaim conveyance was a forgery.[9] We do not retry the facts nor do we find facts or draw conclusions from the primary facts found. *Henry* v. *Klein*, supra. We do review the findings to determine whether they could legally, logically and reasonably be found and whether the trial court could thereby conclude as it did. *Girgenti* v. *Cali-Con, Inc.*, 15 Conn. App. 130, 136, 544 A.2d 655 (1988).

The trial court's finding that the quitclaim deed was a forgery is amply supported by clear and convincing evidence, and is not clearly erroneous. See *Lauder* v. *Peck*, 11 Conn. App. 161, 163, 526 A.2d 539 (1987).

The defendant's attack of the trial court's finding that he fraudulently conveyed both pieces of Darien property to Moryl is grounded on a claim that the evidence failed to show that "the transfer of the property was in fraud of [the plaintiff's] rights or a fraudulent conveyance." We disagree. His claim is predicated on the fact that the trial court, in its memorandum of decision, specifically set forth that it did not find as proved and true the word "fraudulently."[10]

---

[9] The trial court did not make a finding as to who forged the quitclaim deed nor was such a finding necessary in order to declare the deed a nullity.

[10] In its articulation, made in response to the order of this court, the trial court concluded that the word "fraudulently" as used in the complaint was a legal conclusion and not an allegation of fact and thus, not properly a part of the trial court's findings. The trial court found, however, the factual predicate as set forth in the complaint to support its finding of a fraudulent conveyance. Further, he claims that since the deed and the evidence reflect the fact that Moryl paid consideration in the form of a $50,000 promissory note that the transfer cannot be a fraudulent conveyance.

General Statutes § 52-552,[11] which was in effect at the time of the conveyance has been held to be a statutory adoption of the common law of fraudulent conveyances and the common law remedy continues to exist. *White* v. *Amenta,* 110 Conn. 314, 318–19, 148 A. 345 (1930).

"A conveyance is fraudulent if made with actual intent to avoid any debt or duty or if made without any substantial consideration by a person who is or will be thereby rendered insolvent. . . . A person is insolvent for these purposes when he is unable to pay his then-existing debts." (Citations omitted.) *Molitor* v. *Molitor,* 184 Conn. 530, 536, 440 A.2d 215 (1981); *Tessitore* v. *Tessitore,* supra, 42. Thus, the assertion by the defendant that there must be a total lack of consideration is not legally correct. The genesis of the action for a fraudulent conveyance is a lack of substantial consideration, not a total lack thereof. *Tessitore* v. *Tessitore,* supra. The genesis of a fraudulent conveyance may also be found from the existence of a fraudulent intent in which the grantee participated. *Zapolsky* v. *Sacks,* 191 Conn. 194, 199–200, 464 A.2d 30 (1983).

The trial court found as a fact that the transfer to Moryl by the defendant was made with an actual intent to hinder, delay and defraud creditors. The plaintiff needed to establish only one of the alternatives, i.e., that the conveyance was made without any substantial consideration or that it was made with a fraudulent intent in which the grantee participated, not both. *Watson* v. *Watson,* 221 Conn. 698, 707, 607 A.2d 383 (1992); *Tyers* v. *Coma,* 214 Conn. 8, 11, 570 A.2d 186 (1990); *Rocklen, Inc.* v. *Radulesco,* 10 Conn. App. 271, 277, 522 A.2d 846 (1987). "The determination of the

---

[11] General Statutes § 52-552 has since been repealed by Public Acts 1991, No. 91-297, § 13, and we have adopted General Statutes § 52-552a, the Uniform Fraudulent Transfer Act.

question of fraudulent intent is clearly an issue of fact which must often be inferred from surrounding circumstances. . . . Such a fact is, then, not ordinarily proven by direct evidence, but rather, by inference from other facts proven—the indicia or badges of fraud." (Citations omitted; internal quotation marks omitted.) *Zapolsky* v. *Sacks,* supra, 200; *Tyers* v. *Coma,* supra. The record supports the findings of subordinate facts from which fraud can be reasonably inferred in that the inferences are those that can be reasonably drawn.[12]

The defendant's claim is without merit.[13]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[12] Even if the trial court had been in error in finding a fraudulent conveyance, it still would not have availed the defendant. Once the trial court had properly concluded that the deed from the plaintiff to the defendant was a forgery, the deed from the defendant to Moryl would also have been ineffective. "It is fundamental that a grantor cannot effectively convey a greater title than he possesses." *Stankiewicz* v. *Miami Beach Assn., Inc.,* 191 Conn. 165, 170, 464 A.2d 26 (1983); *Kenny* v. *Dwyer,* 16 Conn. App. 58, 64, 546 A.2d 937, cert. denied, 209 Conn. 815, 550 A.2d 1084 (1988).

[13] The defendant concedes that we need address his attack on the trial court's judgment effectively quieting the title to the Holly Lane property only if he prevails on the other issues raised in this appeal. Because of our resolution of the other issues, we need not address the defendant's final claim.