[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter comes to this court on an objection to a notice and claim form mailed to the defendant father pursuant to General Statutes § 52-362 of the General Statutes. The defendant filed a timely objection denying the alleged delinquency. The mater originally came before the court on the August 9, 1999 docket and was twice continued for the parties to retain counsel. The matter was then assigned for special hearing by which time both parties were represented by counsel. A contested hearing consumed the better part one full court day.
Once again the Department of Social Services has misused a very limited statutory procedure for purposes far beyond the clear statutory language. The notice and claim procedure utilized is intended to provide immediate income withholding when the court neglected to address the issue when the judgment entered or in subsequent proceedings. In this case the record indicates that during the pendente lite hearing on August 19, 1992 in which the support order was initially set the court, Kaplan, J., ordered "immediate wage execution". Thereafter, the dissolution court,Brennan, S.T.R., ordered "immediate wage execution" in the judgment dated April 23, 1993. The order was never revoked. Accordingly, there is no purpose for a notice and claim proceeding, since the only relief that can be granted already exists. However, it is noted that this matter has been pending in this court for nearly ten months through several court dates before several Family Support Magistrates. Both parties are represented by counsel, who both have referred to the proceeding as "a hearing concerning alleged arrearages and nonpayment of judgment orders." Since neither counsel has seen fit to object to the procedure or file a motion to dismiss or revise the procedure, this court declines to do so sua sponte. Accordingly the court will treat this matter as a motion to determine arrearage.
In the dissolution judgment custody of the two children issue of the marriage was awarded to the plaintiff mother. The defendant was ordered to pay child support allocated $31.00 per week for Michael, the older child, and $100.00 per week for Melissa. The court found a total arrearage of $1,877.00 on the pendente lite child support order and an additional $1,500.00 owed by the defendant for unreimbursed medical expenses. The defendant was ordered to pay $1.00 per year alimony. CT Page 4903 These orders were never modified. No enforcement action was taken after the dissolution. Both children have reached the age of majority.
The plaintiff claims that the defendant failed to pay the arrearage on the pendente lite support order found owing in the dissolution judgment, failed to pay unreimbursed medical costs also found in the judgment and that he is substantially in arrears on the periodic child support order. The defendant conceded his failure to pay the unreimbursed medical costs and tendered a check at the hearing to pay the same. He denies being substantially behind on his periodic order and instead claims that he is behind no more than $1,975.00 and that since the judgment he has paid no less than $35,950.00 in child support.
The plaintiff mother claims arrearages of at least $30,000. Transcript December 9, 1999 (hereinafter "T"), p. 14. She filed an arrearage affidavit with the Department of Social Services claiming $38,060. Defendant's Exhibit A. She alleges that immediately after the dissolution her support payments were "pretty regular" but after six to eight months they became "sporadic". T, 8. She did not keep a record of payments. She claims that payments were not only irregular but also deficient in amount to the extent that she considered the payments as a "family joke". T, 11, 14, 26.
She recalled getting Federal Express packages containing cash. She estimates receiving fifteen to twenty such packages. She denies ever receiving the court-found support arrearage or unreimbursed medical expenses. T, 12. Additionally, she stated that during ski season of her son Michael's first year of high school, envelopes containing cash were passed to her through Michael. She estimated receipt of five to ten such envelopes containing approximately $100 each. She claims that after the children's senior year in high school, 1997, she got no child support payments.
The defendant father avers that he made "most" of the support payments. T, 67, 111, 121. Later in his testimony he claimed to have paid total support of $31,950. T, 87. He maintains that at some point after the dissolution judgment he paid the arrearage found by the court by a bank check. T, 67, 117-118. He admits that during the period after the dissolution he failed to make support payments during ten to twelve weeks per year that he was out of work. He claims that to offset this he made $150 or $200 payments which he claims were regular after June 1993. He alleges that payments were made when he picked up his son for visitation and later by priority mail. T, 68.
It is up to this court, as the trier of fact, to determine the credibility CT Page 4904 of witnesses and the weight to be given to their testimony. Griffin v.Nationwide Moving Storage Co., 187 Conn. 405, 422, 446 A.2d 799
(1982); Riccio v. Abate, 176 Conn. 415, 418, 407 A.2d 1005 (1979); Raia v.Topehius, 165 Conn. 231, 235, 332 A.2d 93 (1973); Cook v. Bieluch,32 Conn. App. 537, 549, 629 A.2d 1175, cert. denied 228 Conn. 911,635 A.2d 1229 (1993); Cruz v. Kourpouanidis, 12 S.M.D. 38, 39 (1998);Hepburn v. Hepburn, 8 S.M.D. 126, 133 (1994); Fretina v. Fretina, 5 S.M.D. 139, 142 (1991). After hearing the testimony, observing the demeanor of the witnesses, and carefully reviewing the transcript and the exhibits the court concludes that neither party is wholly credible. Lynk v. Lynk, 11 S.M.D. 233, 239 (1997).
The plaintiff's testimony is often vague and occasionally contradictory. One difficulty in evaluating her testimony is her marked propensity for setting chronology through her personal life cycle events rather than by a calendar. Thus payment patterns are described with reference to "right after Melissa's surgery" or "when we were in Simsbury" or "till they were out of the eighth grade". Despite counsel's valiant efforts, most of these events were not definitively linked to calendar dates, or such attempts were so muddled as to be useless. T, 8-11. It was left to the court to piece together the sequence of payments.
She was similarly imprecise as to dollar amounts. For example, contrast her sworn arrearage affidavit, Defendant's Exhibit A, claiming over $38,000 in arrears, which includes a notation of "maybe total $700.00" in cash payments with her testimony on direct examination in which she admits to receiving some $3,300 by Federal Express and another $1,000 in "little envelopes" shuttled by Michael. On cross-examination the plaintiff appeared to back away from these statements reverting to disclaimer of knowledge. T, 18, 25. She denied receiving any payments in 1998. T, 13, 28. Yet the only payments for which the defendant was able to provide direct evidence were canceled checks establishing two $100 payments in May, 1998 and a $200 payment in October, 1998. T, 83-84, 87; Defendant's Exhibit F.
However, the defendant's testimony and evidence warrants even less credibility. The gravamen of the defendant's case is that he paid all or most of his support obligation. He has the burden of proof on this issue. His "proof" consists of his oral testimony, an affidavit and testimony from his son, Michael,[1] three canceled checks verifying $400 in payments in 1998, and "payroll records" claimed to memorialize the bulk of the payments.
Critical to his defense are two thick composition notebooks, Defendant's Exhibits C and D, the contents of which include payroll CT Page 4905 records for the defendant's business. The key entries are numerous notations cryptically marked "KSM" followed by numbers, usually "75", "150" or "200". The defendant testified that these notes memorialize his support payments and that the notation "KSM" signifies Karan-Sue Mish.
Mr. Mish maintains that he "put aside money" for child support from his commissions and recorded it in the business payroll records. T, 69. He explained: "I listed my wife as KSM Karan-Sue Mish as one of my employees from a tax deduction standpoint that way I could allocate exactly how much of my gross income was allocated for child support, and how much was actually paid to her not with the kids." T, 71.
Later in the hearing he offered the following explanation: "And the second reason for that was I talked with my wife. It was to help her and not show income for tax purposes. So I was deliberately giving her cash so she would not have to declare any income for child support." T, 89. Thus incredibly the defendant insists that reason for cash payment was to confer a benefit upon the plaintiff that does not exist. Child support payments are not taxable income. Internal Revenue Code § 71(c). If the court were to actually believe the defendant's claim in this regard, it would also have to recognize an admission of the defendant's willingness to complicity in cheating the Internal Revenue Service.
An even more serious and direct problem was illuminated in cross-examination. In short, plaintiff's counsel identified numerous erasures, markovers, conflicting entries (different ink, different style, etc.) and inconsistencies in the items in the payroll records purportedly recording the payments to the plaintiff. T, 96-108, 118-121; Defendant's Exhibit C, tabs 1-7, 12-17; Defendant's Exhibit D, tabs 8-11. The defendant's explanations of these discrepancies was unconvincing. The evidence establishes that the records were altered. While it is not proven that the alterations were made for specific purposes of the present litigation, they severely undercut the credibility of the entirety of Exhibits C and D.
The defendant maintains that at the inception of the support order he made his payments by check. However, most of the disputed payments are alleged to have been made in cash. The defendant's explanation of this is unconvincing. He said that because his checking account was in a bank that had no branches convenient to his then residence in the Norwich area, he switched to cash payments. He claims that he was unable to open a checking account in a Norwich area bank because of a previous personal bankruptcy. T, 88-89. Nonetheless in CT Page 4906 1998 when he resumed payment by personal check, he apparently surmounted these problems since the checks were written on the same bank and list his residence address in the Town of Lisbon which is near Norwich.
Further reference to the composition books, Exhibits C and D, cast additional doubt on the defendant's tale. The books are interleaved with numerous receipts and other documents. Neither side requested that these documents be removed or covered. Accordingly the court regards them as part of the exhibits. Among the receipts are numerous deposit slips from Beverly Co-operative Bank in Beverly, Massachusetts and First Federal Bank. There are numerous United States Postal Service Express Mail receipts and a smaller number of receipts for postal money orders, all apparently related to business transactions. These papers belie the defendant's contention that he was unable to maintain a sufficient banking relationship to pay his child support by check. Furthermore they cast doubt on his claim of having made numerous payments via priority mail which he is unable to document. On the contrary, these exhibits establish that Mr. Mish is capable of keeping copious and detailed records when it suits his purposes.
The court has the right to accept part and disregard part of the testimony of any witness. Barrila v. Blake, 190 Conn. 631, 639,461 A.2d 1375 (1983); Smith v. Smith, 183 Conn. 121, 123,438 A.2d 842 (1981); Rood v. Russo, 161 Conn. 1, 3, 283 A.2d 220
(1971); Lynk v. Lynk, 11 S.M.D. 233, 241 (1997); Carli v. Ruszala, 10 S.M.D. 320, 321 (1996); Tsirigotis v. Tsirigotis, 9 S.M.D. 152, 155 (1955); Kimery v. Kimery, 9 S.M.D. 54, 56 (1995); Berluti v. Berluti,
5 S.M.D. 377, 382 (1991).
The defendant has the burden of proof of payment. Lynk v. Lynk,
11 S.M.D. 233, 242 (1997); Augustus v. Augustus, 2 S.M.D. 32, 33 (1988);Hackett v. Perry, 1 S.M.D. 102 (1987). This burden is usually met by producing documentary proof. In this case a good deal of the "documentation" is suspect. However, the court finds that neither party was wholly truthful, nor wholly false. The court concludes that the defendant made some, but not all of the payments in question. Lynk v.Lynk, 11 S.M.D. 233, 242 (1997); Eriksson v. Eriksson, 2 S.M.D. 91 (1988), Augustus v. Augustus, 2 S.M.D. 32, 33-34 (1988).
The defendant is credited with the following payments: From the date of the dissolution judgment, regular payments in accordance with the order to the end of calendar year 1993 (T, 8, 24) = $4,585.00. For the winter of 1994-95, when "little envelopes" were transmitted through Michael (T, 13) = $1,000.00. For the remainder of calendar 1994 and CT Page 4907 until June, 1995 when the plaintiff moved to the Town of Monroe, "sporadic" payments roughly once a month = $2,500.00. For two years from June, 1995 through June, 1997 based on the plaintiff's recollection of the amount paid during that period (T, 31) = $3,300.00. For the period July, 1997 until youngest child, Melissa, reached majority on October 14, 1998 the court finds that the defendant made cash payments at the same rate as the immediately preceding period (24.22%) = $1,872.00 plus credit for the payments evidenced by the three checks comprising Defendant's Exhibit F = $400.00. The court rules that the support arrearage found in the original judgment was not paid. Thus, the court finds total payments to be $13,657.00.
The total of payments due is computed as follows. The arrearage found in the dissolution judgment was $1,877.00. From the date of the judgment until January 22, 1998 when Michael emancipated, 248 weeks at $131.00 per week = $32,488.00. From January 23, 1998 through October 14, 1998 = $3,800.00. The charges total $38,165.00.
"The present arrearage can be computed by simply adding all charges under the operative support order, and subtracting all proper payments and credits." Giordano v. Giordano, 14 S.M.D. ___ (2000);Filiatrault v. Becotte, 12 S.M.D. 154, 156 (1998); Lynk v. Lynk, 11 S.M.D. 233, 242 (1997); Thibault v. Thibault, 10 S.M.D. 313, 317 (1996); Alicea v.Villafane, 10 S.M.D. 40, 42 (1996); Landon v. Landon, 8 S.M.D. 200, 202 (1994). Accordingly, the court finds the child support arrearage to be $24,508.00 as of October 15, 1998.
Additionally, the plaintiff demands interest on the. unpaid judgment. The court requested that each party submit a written memorandum articulating its position with a proposed computation of arrearages. The plaintiff based her claim on General Statutes § 37-3a. The defendant essentially conceded that if this court found the original arrearages unpaid, the plaintiff's computation was correct. Since the court found for the plaintiff on those issues, interest is awarded to the plaintiff in the amount of $1,586.70.
The plaintiff also demands counsel fees pursuant to General Statutes § 46b-62. The plaintiff did not submit a bill or accounting of her claim. Moreover as was stated at the outset, the initial filing was a delinquency notice and claim filed by the Department of Social Services, a procedure that was inapposite to this case. The court finds it inappropriate exercise its discretionary authority to award counsel fees where an inappropriate procedure was utilized. Although the court agreed to deem the issue to be a motion to determine arrearage, there is no authority to award counsel fees for such a proceeding. The demand CT Page 4908 for counsel fees is denied.
The defendant is ordered to pay $50.00 per week on the arrearage[2]
commencing May 1, 2000. All payments are to be made as directed by the support enforcement division. Any withholding order and all other proceedings under the notice and claim are vacated and dismissed. The court orders immediate income withholding to enforce this court's order. The court also orders the defendant to pay a lump sum of $3,463.70, consisting of the unpaid support arrearage in the dissolution judgment and the interest thereon, such payment to be made to the support enforcement division on or before May 21, 2000.
BY THE COURT
 Harris T. Lifshitz Family Support Magistrate