[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff mother moved that the defendant be found in contempt for failure to comply with the child support order and also for failure to pay half of unreimbursed medical costs. The plaintiff seeks a total of $23,204.97 plus the costs of prosecuting the contempt motion. The defendant filed a written objection asserting, inter alia, that the defendant has paid all of his child support obligation, lack of notice as to the claimed medical costs and laches as to both claims.
The parties married in 1966. There are two children issue of the marriage: Don Lynn Gatter born February 16, 1967 and Robin Lee Gatter born June 3, 1974. The plaintiff mother commenced the dissolution of marriage action in September 1985. A judgment dissolving the marriage issued on February 23, 1987. The court, Kaplan, J., incorporated a ten page separation agreement of even date. It provided for joint custody of Robin[1] with the principal residence being with the plaintiff. The defendant agreed to pay $500.00 per month in child support. He also CT Page 1830-aw agreed to pay an orthodontist bill for Robin at the rate of $60.00 per month, to share half of all unreimbursed medical costs and to pay half of the cost of a four-year college education. This judgment was never modified. The court file reveals no enforcement activity until the present sequence commenced. Robin reached majority on June 3, 1992 at which time the current support order ceased.
 I. CHILD SUPPORT ARREARAGE
It is up to this court, as the trier of fact, to determine the credibility of witnesses and the weight to be given to their testimony.Griffin v. Nationwide Moving Storage Co., 187 Conn. 405, 422,446 A.2d 799 (1982); Riccio v. Abate, 176 Conn. 415, 418, 407 A.2d 1005
(1979); Raia v. Topehius, 165 Conn. 231, 235, 332 A.2d 93 (1973); Cookv. Bieluch, 32 Conn. App. 537, 549, 629 A.2d 1175, cert. denied228 Conn. 911, 635 A.2d 1229 (1993); Cruz v. Kourpouanidis, 12 S.M.D. 38, 39 (1998); Hepburn v. Hepburn, 8 S.M.D. 126, 133 (1994); Fretina v.Fretina, 5 S.M.D. 139, 142 (1991).
The defendant has the burden of proof of payment. Lynk v. Lynk, 11 S.M.D. 233, 242 (1997); Augustus v. Augustus, 2 S.M.D. 32, 33 (1988);Hackett v. Perry, 1 S.M.D. 102 (1987). This burden is usually met by producing documentary proof. The court concludes that the defendant made some, but not all of the payments in question. Mish v. Mish, 14 S.M.D. ___ (2000); Lynk v. Lynk, 11 S.M.D. 233, 242 (1997); Eriksson v.Eriksson, 2 S.M.D. 91 (1988), Augustus v. Augustus, 2 S.M.D. 32, 33-34 (1988).
The defendant introduced some 76 canceled checks dated from early 1991 through late 1997. He also offered six check registers from his personal account covering the period from 1985 through December, 1998. Many of the checks are unavailable. He claims that he regularly destroys old checks and bank statements. He produced a letter (Defendant's exhibit 1) from his bank explaining that between its seven year retention period and the merger and acquisition activity which interceded, it was unable to produce back records.
The plaintiff suggested that the check registers were not genuine and expended some effort in the disclosure stage attempting to arrange ink dating or otherwise challenge their authenticity. However no objective evidence was introduced — only the subjective recollection of tile plaintiff herself that the registers appeared changed from their appearance during earlier settlement efforts. The defendant testified that the entries in the check register were made contemporaneously with the CT Page 1830-ax writing of the checks. He notes that each register has on its back cover a printed three-year calendar. These calendars conform with reasonable proximity to the years of use.
The court has the right to accept part and disregard part of the testimony of any witness. Barrila v. Blake, 190 Conn. 631, 639,461 A.2d 1375 (1983); Smith v. Smith, 183 Conn. 121, 123, 438 A.2d 842
(1981); Rood v. Russo, 161 Conn. 1, 3, 283 A.2d 220 (1971); Lynk v.Lynk, 11 S.M.D. 233, 241 (1997); Carli v. Ruszala, 10 S.M.D. 320, 321 (1996); Tsirigotis v. Tsirigotis, 9 S.M.D. 152, 155 (1955); Kimery v.Kimery, 9 S.M.D. 54, 56 (1995); Berluti v. Berluti, 5 S.M.D. 377, 382 (1991). The court finds the check registers probative of the checks written by the defendant.
The plaintiff concedes that a significant amount of support was paid over the years. She does not have contemporaneous records of the payments. Instead, she completed an arrearage affidavit which credits the defendant with $16,000.00 in payments between 1987 and 1992. However, she claims that he is delinquent by $17,000.00 for the same period[2]. The defendant submitted an exhibit purporting to set forth all of his payments including the canceled checks and those not produced but listed in the check register. His claimed payments total $41,161.17. If the entire total were proven to be child support this amount would exceed the total support charges plus the medical claim.
The payments claimed by the defendant were all made payable to the plaintiff. However the majority are not labeled in either the check register or on the canceled checks. There were a number of reasons besides child support for Mr. Gatter to have made payments to the plaintiff. For example, in November 1987, she loaned the defendant $5,000.00 as memorialized by a signed handwritten note. For several years he paid interest on the note in varying amounts in the $40 range. Many of the checks shown in the check register are in this amount. The court finds that these were interest payments, not child support. Additionally the defendant often combined gifts for extracurricular activities, books, college expenses and even for eyeglasses in some checks.
After June 1992, when the last child support payment was due, checks were written in various amounts. In 1994 a series of $250.00 checks were interspersed among other amounts. In 1997 monthly checks for $200.00 were issued on a regular basis. While Mrs. Garter did not keep contemporaneous records of child support payments, she did record loan payments. Plaintiff's Exhibit D. Most of the $250.00 and $200.00 payments coincide CT Page 1830-ay with loan principal payments. It appears that after the loan was paid off the defendant made a few additional payments in like amounts to apply to his child support debt. The few checks that bear a legend are labeled "on account" which is consistent with either a loan payment or a child support arrearage payment.
The court has carefully compared the defendant's list of checks, the check registers, the canceled checks, the plaintiff's arrearage affidavit and the plaintiff's list of loan repayments. The numerous $500.00 payments clearly were child support. Many coincide with the arrearage affidavit. The court finds that these payments, including a few in multiples of $500.00 are child support and that the defendant in fact made most of the payments through February 1991, when he stopped. The court includes $500.00 credits for several checks that appear to combine a monthly support payment with other items, usually the loin interest. The court also credits as arrearage payments those $250.00 or $200.00 payments that exceed the loan principal payments recorded by Mrs. Gaffer.
The defendant is credited total payments $24,500.00 in regular support payments made through February 1991. Thereafter, the defendant is credited with an additional $1,050.00 which the court finds paid against his support arrearage. The defendant failed to sustain his burden of proof that the remaining payments on the check registers were intended as child support or arrearage payments. Therefore the total payments to be credited to child support are $25,550.00.
The total of payments due is computed by charging $500.00 per month commencing February 23, 1987 the date of the judgment through June 3, 1992 when Robin reached the age of majority. Since the judgment did not specify a due date, the court will compute a charge for each month on the 23rd day of the month. The last monthly payment is not prorated. The charge period is for 64 month totaling $32,000.00.
"The present arrearage can be computed by simply adding all charges under the operative support order, and subtracting all proper payments and credits." Giordano v. Giordano, 14 S.M.D. ___ (2000); Filiatrault v.Becotte, 12 S.M.D. 154, 156 (1998); Lynk v. Lynk, 11 S.M.D. 233, 242 (1997); Thibault v. Thibault, 10 S.M.D. 313, 317 (1996); Alicea v.Villafane, 10 S.M.D. 40, 42 (1996); Landon v. Landon, 8 S.M.D. 200, 202 (1994). Accordingly, the court finds the child support arrearage to be $6,450.00 as of December 31, 1998.
The defendant claims that the plaintiff should be barred from enforcing this remaining arrearage by laches. "Laches consists of an inexcusable CT Page 1830-az delay which prejudices the defendant." Bozzi v. Bozzi, 177 Conn. 232,239, 413 A.2d 834 (1979); Kurzatkowski v. Kurzatkowski, 142 Conn. 680,685, 116 A.2d 906 (1955); Brock v. Cavanaugh, 1 Conn. App. 138, 140,468 A.2d 1242 (1984); Lownds v. Lownds, 41 Conn. Sup. 100, 551 A.2d 775
(1988); Fialko v. Fialko, 6 Conn. L. Rptr. 574 (1992); Lynk v. Lynk, 11 S.M.D. 233, 235 (1997); Finneran v. Finneran, 9 S.M.D. 78, 81 (1995);Thomas v. Ah Tau Ah Nee, 8 S.M.D. 135, 139 (1994); Anderson v.McFarlane, 7 S.M.D. 131 (1993), affirmed, Superior Court, Judicial District of Litchfield, doc. no. FA89-0049689 (R. Walsh, J., Oct. 24, 1994); Cobian v. Cobian, 4 S.M.D. 68 (1990); Samatowitz v. Samatowitz, 4 S.M.D. 30 (1990). "Laches consists of two elements. First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant. . . . The mere lapse of time does not constitute laches . . . unless it results in prejudice to the defendant . . . as where, for example, the defendant is led to change his position with respect to the matter in question." (Citations omitted; internal quotation marks omitted.) Papcun v. Papcun, 181 Conn. 618, 620-21,436 A.2d 282 (1980).
"[S]ince there was already court ordered support, the plaintiff was under no obligation to do anything further to affirmatively assert her support claim. Therefore, there was no "inexcusable delay'." Powell v.Powell, 6 S.M.D. 154, 159 (1990). "There was no legal duty imposed on the plaintiff to affirmatively pursue enforcement of the periodic support order." Lynk v. Lynk, supra, 11 S.M.D. 236; Powell v. Powell, supra, 6 S.M.D. 159. There is no evidence that the defendant was induced by any action of the plaintiff to change his position to his detriment. Accordingly, the defendant has failed to establish laches as a defense to the support arrearage.
 II. CLAIMS FOR MEDICAL EXPENSES
Additionally, the plaintiff demands payment of $6,612.71 of unreimbursed medical and dental costs. In compliance with a court order at a previous hearing she has filed a comprehensive summary with supporting documentation. Plaintiff's Exhibit F. The bills are for the period from 1987 through 1992. She claims that she had previously provided this documentation to the defendant and demanded payment. The defendant denies that he received specific documentation or demand for payment. Neither party can corroborate their claims.
In the dissolution judgment the defendant was ordered to provide medical insurance for Robin "as long as same is available through his employment." In the transcript of the dissolution hearing, the judge CT Page 1830-ba stated that "the husband shall continue to provide medical insurance." Impliedly, the defendant had existing medical insurance at the time. However, there is no indication in the exhibit that either party claimed any of the medical costs against defendant's medical insurer. Instead the plaintiff obtained medical insurance through her employment and many of the medical costs were reduced through her insurer. |
The plaintiff has not established whether or not the defendant failed to carry medical insurance or at which times before Robin reached majority. The plaintiff claims part of the costs of her medical insurance, in particular a total of $924.41 from 1990 through 1992. There is no provision in either the judgment or the separation agreement that require the defendant to contribute to the plaintiff's medical insurance costs.
"[T]he most common remedy for failure to comply with a medical insurance order is for the court to order the respondent to immediately obtain the required medical insurance. Obviously, for this remedy to have any benefit, the contempt claim must be brought timely. Unlike the periodic support order itself, therefore, the court finds that the plaintiff had a duty to determine whether the medical insurance was provided or seek enforcement if it was not. The court finds under the circumstances that her delay in doing so was inexcusable." Lynk v. Lynk, 11 S.M.D. 233, 236-7 (1997). Accordingly, this portion of her claim is denied.
As to the remaining medical costs, the defendant claims laches. Unlike the child support order itself, where the legal obligation to pay a set amount is established by court order, ancillary medical orders are fluid and often contingent on other conditions. In the present case, the defendant's requirement to maintain medical insurance was contingent upon availability through employment. His obligation to pay unreimbursed medical and dental costs was subject to the bills first being submitted to all available medical insurance. The defendant had a right to be timely provided documentation of the bills so that he could confirm that the services were provided for Robin and that they were reasonable medical or dental expenses.
Although the plaintiff claims that she provided the defendant with medical bills on a timely basis the passage of time makes it difficult for the defendant to contest this claim or for the court to adjudicate it. Furthermore, while a reasonable person ordered to pay child support may be expected to keep permanent records proving payment of his periodic order, this expectation does not extend to ancillary matters such as payment of medical expenses. In this case the check registers show that CT Page 1830-bb several payments were made which could have applied to some of the claimed medical bills[3]. The delay in enforcement deprived the defendant of a reasonable ability to prove compliance or alternatively to submit the bills to any medical insurance available to him. Her delay was not excusable and did prejudice the defendant. Castonguay v. Plourde,46 Conn. App. 251, 265, 699 A.2d 226, cert. denied 243 Conn. 931,701 A.2d 660 (1997). Accordingly, the court holds that the plaintiff is precluded from by laches from collection of claimed unreimbursed medical and dental costs.
 III. CONCLUSION
The defendant is ordered to pay $250.00 per month on the arrearage[4]
commencing February 1, 2001. Additionally he is ordered to make a lump sum payment of $2,000.00 on or before 10:00 A.M. on Friday, March 16, 2001. All payments are to be made as directed by the support enforcement division. The court orders immediate income withholding. The contempt citation is continued to March 16, 2001 to monitor compliance with these orders. The support enforcement division is authorized to excuse the defendant and counsel in the event that he is in full compliance and there is no other business regarding this case to be brought before the court.
BY THE COURT _________________________ Harris T. Lifshitz Family Support Magistrate