ROSEMARIE RAIA ET AL. *v.* HARRY C. TOPEHIUS ET AL.

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued June 8—decided June 29, 1973

*John M. Byrne,* with whom, on the brief, was *Snow G. Munford,* for the appellants (defendants).

*Richard W. Wright,* for the appellees (plaintiffs).

LOISELLE, J. The plaintiff Rosemarie Raia brought an action to recover damages for injuries she suffered when her husband's motor vehicle which she was operating struck a bridge abutment. The plaintiff Francis Raia sought recovery for damage to his motor vehicle and for wages lost because he was required to care for his wife. The plaintiffs alleged that the negligence of the defendant Harry C. Topehius in operating a motor vehicle owned by the defendant Alfred Tanguay caused the aforementioned injuries and damages. The defendants denied the allegations of negligence and pleaded contributory negligence on the part of the plaintiff Rosemarie Raia. The jury returned a verdict and judgment was rendered for the plaintiffs, and the defendants have appealed.

Three of the four assignments of error which are pursued in the defendants' brief relate solely to the trial court's instruction to the jury on the issue of liability. The correctness of the charge is determined by the claims of proof of the parties related in the finding. Practice Book § 635; *Busko* v. *DeFilippo,* 162 Conn. 462, 464, 294 A.2d 510; *Moonan* v. *Clark Wellpoint Corporation,* 159 Conn. 178, 180, 268 A.2d 384. The plaintiffs offered evidence to prove and claimed to have proved the following facts: Harry C. Topehius, hereinafter called the defendant, passed the vehicle operated by Rosemarie Raia, hereinafter called the plaintiff, and pulled quickly in front of her automobile. It was the defendant's intention to pass the plaintiff's vehicle, pull in front of her and make her stop in the middle of the road. The defendant overtook the plaintiff's vehicle in such close proximity that her vehicle was

forced into a bridge abutment. Just prior to the accident, the defendant was traveling between fifty-five and sixty miles per hour in an area limited to forty-five miles per hour and classified as a no-passing zone by the state traffic commission. As a result of the collision, the plaintiff was injured and the vehicle she was driving was a total loss.

The defendants offered evidence to prove and claimed to have proved that while the defendant was operating the Tanguay vehicle on route 195, a public highway, a motor vehicle operated by the plaintiff pulled out in front of him from a side road. The defendant slammed on his brakes and turned to his right and his vehicle went off the side of the road, up an embankment and brushed against a tree, damaging the bumper, front end and grill. The plaintiff did not stop. The defendant drove up behind the plaintiff and in an attempt to attract her attention the defendant sounded his horn and blinked his lights. The plaintiff gave no indication of an intent to stop her vehicle. The defendant then passed the plaintiff's vehicle and pulled completely back into the westbound lane of route 195. When he saw the plaintiff's headlights in his rear view mirror he touched his brakes. Thereafter, he heard a crashing sound and brought his vehicle to a stop. Each lane of travel on route 195 is fifteen and one-half feet wide and the bridge abutment at the scene of the accident protrudes into the traveled portion of the highway between one and two feet.

The defendants assign error in the court's refusal to charge the jury that if they found from the evidence that the incident was a "pure accident" or an "unavoidable accident," then the plaintiffs could not recover. "Instructions concerning unavoidable acci-

dent should usually be given only when the record can support a finding that the negligence of neither party is involved. When a foundation has been established for the charge, it is within the sound discretion of the trial judge to determine whether a charge should be given on the subject of unavoidable accident." *Robinson* v. *Faulkner,* 163 Conn. 365, 370, 306 A.2d 857; see *Seney* v. *Trowbridge,* 127 Conn. 284, 16 A.2d 573; annot., 65 A.L.R.2d 12. As the court's charge on proximate cause and burden of proof is neither attacked in the brief nor included in the finding, it is assumed to be correct in law, adapted to the issues and sufficient for the guidance of the jury. *Begley* v. *Kohl & Madden Printing Ink Co.,* 157 Conn. 445, 451, 254 A.2d 907; *State* v. *Mallette,* 153 Conn. 584, 587, 219 A.2d 447. Considering the offers of proof in the finding, the court did not abuse its discretion is refusing to charge on the issue of unavoidable accident. *Robinson* v. *Faulkner,* supra; *Hedberg* v. *Cooley,* 115 Conn. 352, 355, 161 A. 665; annot., 65 A.L.R.2d 12, 136.

The defendants claim that the court erred in refusing to charge the jury on the maxim falsus in uno, falsus in omnibus as requested in a written request to charge. Only the court's charge removing from the jury's consideration the defendant's allegation of speed in the special defense appears in the finding. As the remainder of the charge is not in the record, it is presumed that the portion of the charge relating to instructions concerning the credibility of witnesses is correct. *State* v. *Mallette,* supra.

The maxim falsus in uno, falsus in omnibus in its permissive form has been approved in this state as an instruction to the jury in relation to their determination of the credibility of witnesses. *Willa-*

*metz* v. *Guida-Seibert Dairy Co.,* 157 Conn. 295, 297, 301, 254 A.2d 473; *Craney* v. *Donovan,* 92 Conn. 236, 246, 102 A. 640; *Gorman* v. *Fitts,* 80 Conn. 531, 538, 69 A. 357; see also *Enlund* v. *Buske,* 160 Conn. 327, 333, 278 A.2d 815. The approved instruction deals with the weight and credibility of testimony and not with the competency of witnesses. It serves as an aid to the jury in weighing and sifting the evidence. It is not a mandate to disregard all testimony of a witness who has been found to have wilfully or knowingly testified falsely as to any material fact although that was its literal meaning and original purpose. *The Santissima Trinidad,* 20 U.S. (7 Wheat.) 283, 339, 5 L. Ed. 454; 1 Jones, Evidence (6th Ed.) § 29, p. 64 n.12; 3 Wigmore, Evidence (3d Ed.) § 1009; annot., 4 A.L.R.2d 1077. It has long been an established legal principle in this state that the trier of fact has the right to accept part and disregard part of the testimony of a witness. *Rood* v. *Russo,* 161 Conn. 1, 3, 283 A.2d 220; *Desmarais* v. *Pinto,* 147 Conn. 109, 111, 157 A.2d 596; *Humphrey* v. *Argraves,* 145 Conn. 350, 355, 143 A.2d 432; *Clark* v. *Haggard,* 141 Conn. 668, 674, 109 A.2d 358. The rule was well stated in *State* v. *Chisolm,* 162 Conn. 631, 632, 295 A.2d 563: "The quality, not the quantity, of the evidence is the proper test and it is for the jury as the trier of fact to determine the credibility of witnesses and what testimony they believe and what they consider is unworthy of credence." The approved instruction on the maxim, in its permissive form, is at best merely advisory. *Norfolk & W. Ry. Co.* v. *McKenzie,* 116 F.2d 632, 635 (6th Cir.). Under the proper instruction the jury may or may not, as they see fit, reject all the testimony of the witness, and act on their own judgment as to the value and credibility of the testi-

mony. *Virginian R. Co.* v. *Armentrout,* 166 F.2d 400 (4th Cir.); annot., 4 A.L.R.2d 1077; 3 Wigmore, op. cit. § 1010. Under the general instructions by the court relating to the credibility of witnesses, the jury are similarly advised even if in fact the maxim is not called to their attention. Annot., 4 A.L.R.2d 1080 n.18. Instruction on the maxim is a matter resting in the sound discretion of the trial judge. *State* v. *Ernst,* 150 Me. 449, 463, 114 A.2d 369; *State* v. *Crow,* 486 S.W.2d 248 253–54 (Mo.); *State* v. *Ernst,* 32 N.J. 567, 583, 161 A.2d 511; annot., 4 A.L.R.2d 1065, 1077, 1105. As previously stated, the charge on the issue of credibility of witnesses in this case is presumed to have been in accordance with law and the court's refusal to comply with the specific request to charge could not have prejudiced the defendants. The court was not in error in refusing to charge on the legal maxim of falsus in uno, falsus in omnibus.

The defendants next claim that the court was in error in refusing to charge the jury that they were entitled to draw an adverse inference from the failure of the plaintiff to call as a witness A. Frederick Serbin, one of the physicians who examined the plaintiff. Two necessary elements must be shown before an unfavorable inference may be drawn by the jury against a party not producing a witness: the witness must be available and he must be a witness whom the party would naturally produce. *State* v. *Cobbs,* 164 Conn. 402, 422, 324 A.2d 234; *Queen* v. *Gagliola,* 162 Conn. 164, 168, 292 A.2d 890; *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 675, 165 A.2d 598. Although counsel for the plaintiff did represent during the voir dire that Serbin would be called as a witness, and during

the trial stated that he would show the reasonableness of Serbin's bill by calling him at a later time, no one produced any evidence as to the availability of Serbin.

Serbin was a witness whom the plaintiff naturally would have produced. The defendants argue that they had a right to rely on representations by the plaintiff's counsel that Serbin would be called, and that proof of availability was not required under such circumstances. There is no indication that these representations were made with any motive to deceive or to lull the defendants into reliance on such statements. Mere evidence of intention on the part of an attorney to call a witness is not evidence that the witness is available. The statements of the plaintiff's counsel did not place the defendants in a position different from any other defendant who realizes at the close of the plaintiff's case that a witness who would naturally be called by the plaintiff did not testify. To avail themselves of the rule the defendants had the burden of showing that Serbin was available. Since the defendants failed to provide evidence of Serbin's availability, an instruction on the rule would have been erroneous. *State* v. *Cobbs,* supra; *Queen* v. *Gagliola,* supra, 169; *Greenwich Contracting Co.* v. *Bonwit Construction Co.,* 156 Conn. 123, 130, 239 A.2d 519.

The final claim of error briefed by the defendants is that the court erred in refusing to set the verdict aside or to order a remittitur in the case of Rosemarie Raia in that the verdict of $7500 was excessive. This claim is tested by the evidence printed in the appendices to the briefs. Practice Book § 718; *State* v. *Manning,* 162 Conn. 112, 122, 291 A.2d 750; *Toomey* v. *Danaher,* 161 Conn. 204, 208, 286 A.2d 293.

The appendix to the plaintiff's brief does not contain any evidence or narrative of evidence concerning injuries except a reference to x-rays taken by Serbin. The appendix to the defendant's brief narrates with detail the evidence on damages produced by both sides.

Viewing the evidence most favorable to the plaintiff, as the trial court did in its memorandum of decision on the motion to set aside the verdict, the jury could have found that the plaintiff suffered multiple bruises, a cervical strain and strain and contusion of the temporal mandibular joints. After the accident, which occurred on December 3, 1968, the plaintiff's face was swollen and bruised to such an extent that she could not open her jaw. She had pain in her neck and in certain instances had discomfort when she turned her head. About three weeks after the accident, she complained of pain in the lumbar area. Around January 9, 1969, her headaches were severe and constant and at the end of January, 1969, she had difficulty turning her head. She wore her neck collar until the end of February, 1969. She experienced pain in her jaw up to the time of trial in September, 1971. The plaintiff was treated by Norman Zlotsky, a physician, and visited his office about fifteen times. As a further result of the accident, she was unable to return to work for a period of about four weeks. Her average pay for the eleven weeks prior to the date of the accident was about $50 per week.

"In determining whether or not the award was excessive we must bear in mind that the weight to be accorded to testimony is a matter for the jury, and the assessment of damages is peculiarly within their province. *Douglass* v. *95 Pearl Street Corpora-*

*tion,* 157 Conn. 73, 81, 245 A.2d 129. The basic question is whether the award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, prejudice, mistake or corruption. *McKirdy* v. *Cascio,* 142 Conn. 80, 86, 111 A.2d 555. The action of the trial court is not to be disturbed unless it abused its legal discretion and, in determining this, great weight should be given to the action of the trial court and every reasonable presumption should be given in favor of its correctness. *Camp* v. *Booth,* 160 Conn. 10, 13, 273 A.2d 714." *Ruda* v. *McKinstry,* 162 Conn. 268, 272–73, 294 A.2d 318. Although the award of damages was liberal, on the evidence presented there was no error in the refusal of the court to set aside the verdict. It cannot be held as a matter of law that the award does not fall within the necessarily uncertain limits of just damages. *Ruda* v. *McKinstry,* supra; *Darling* v. *Burrone Bros., Inc.,* 162 Conn. 187, 201, 292 A.2d 912; *Pischitto* v. *Waldron,* 147 Conn. 171, 175, 158 A.2d 168.

There is no error.

In this opinion the other judges concurred.