[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The defendant father has moved to modify the child support order, claiming a substantial deviation from the guidelines and a substantial change of circumstances. Both parties were present and represented by counsel over several days of hearings. Both parties no longer reside in Connecticut: the plaintiff mother now lives in Pennsylvania with the minor children, and the defendant has recently moved to the Commonwealth of Virginia. There has been some litigation regarding the proper forum for certain related proceedings, resulting in a determination that Connecticut remained the proper forum. For purposes of the motion before this court, jurisdiction is conceded by both parties.
The present motion (#196.00) was filed on June 9, 1995 with a copy mailed to the defendant's counsel on the same date pursuant to Practice Book § 123.
The plaintiff and the defendant intermarried on March 6, 1983 at Wilkes-Barre, Pennsylvania. There are two minor children issue of the marriage: John, born March 13, 1985, and Nikitas, born February 9, 1986. The plaintiff commenced the dissolution of marriage action in June, 1989. It was fully and bitterly CT Page 10828 contested, with a judgment dissolving the marriage finally entered on February 4, 1992 (Purtill, J.). The judgment incorporated a written stipulation of even date. The plaintiff mother was awarded sole custody of the minor children. The defendant husband agreed to pay unallocated alimony and support in the amount of $250 per week for a period of two years, and thereafter to pay $200 per week as child support.
The financial affidavits closest to the date of the judgment were filed on December 16, 1991. The defendant's affidavit disclosed gross income of $848.08 per week, with a net of $585.50. He listed assets of $28,243.11 and liabilities of $28,991.00. He claimed the family residence as having no equity, with a mortgage balance equal to the estimated value. The plaintiff mother's affidavit indicated gross monthly income of $2,045.00, with a monthly net of $1,458.36. She listed assets of $8,710.06, including one-half of the family residence, which she claimed has about $13,000 in equity. Her liabilities exceeded $67,000. She is a biology teacher in the public school system in Berwick, Pennsylvania. Today she holds the same position with only longevity steps as an increase. Her income is now $607.31 per week gross, with a net of $419.51.
The defendant resigned his position at Electric Boat on January 2, 1995 (Defendant's Exhibit 23). He is now employed as a security guard at IPC International in McLean, Virginia. His gross weekly income is $192.00, with a net of $159.21. The defendant claims that his resignation was forced by Electric Boat. He suggests that the employer is engaged in downsizing and seized upon a minor violation of company rules to force him out and avoid unemployment compensation. He also claims he has been diligently seeking new employment.
The plaintiff argues that his discharge was caused by his own misconduct in violating company rules. She also claims that he has not diligently sought employment and is not utilizing his earning capacity. She claims his earning capacity is sufficient to sustain the present support order.
The defendant was a senior nuclear project engineer with Electric Boat. He had been with the company since April, 1985. His resignation resulted from several weeks of surveillance by the company which determined that on a number of occasions he had been observed jogging during the middle of the work day. He was confronted and accused of mischarging time, and given the choice CT Page 10829 of resigning or being, fired[1]. He applied for unemployment compensation, which was initially granted. The company appealed, and on March 6, 1995 the Appeals Referee reversed the Administrator's determination, finding that the defendant was discharged for "repeated wilful misconduct" and therefore was disqualified from receiving benefits. (Defendant's Exhibit 15.) The defendant then appealed to the Employment Security Appeals Division. On August 10, 1995, the Board of Review reversed the decision of the Appeals Referee and remanded for further proceedings.
Mr. Tsirigotis claims that he had obtained permission of his supervisor to jog during daytime hours on condition that he made up the time. He claims that he had logged numerous hours of unpaid overtime more than sufficient to make up for the time spent jogging. The defendant's supervisor, John Fakis, wrote a letter on December 30, 1994 to the official investigating the defendant which basically supported Mr. Tsirigotis' claims. While conceding that the defendant apparently did not follow the procedures in clocking in and out, he stated he believed that the omission was the result of a misunderstanding. He stated that Mr. Tsirigotis had been authorized by him to jog during work hours, and that Tsirigotis had worked late to make up the time. He concluded that he had "no reason to believe that Mr. Tsirigotis deliberately mischarged his time." (Defendant's Exhibit 16.) This letter was found to be significant by the Board of Review, which specifically directed the Appeals Referee to obtain testimony from Fakis at the remand hearing. The Board also held: "Since the claimant was a flex-time professional employee, the claimant was permitted to arrive early and leave late. The claimant may have misunderstood the purpose of the clocking system as it applied to professionals and thought it was not necessary to clock out during the time he jogged, as long as he made up the hours and charged the hours to the appropriate account."
Mr. Fakis was subpoenaed to the present hearing. He testified that he stands by his statements in the December 30 letter. He believed that Tsirigotis was "very conscientious" in discharging his job duties. He felt that the defendant had difficulty remembering to clock in and clock out. He stated that professionals are not used to punching a clock, and that others under his supervision also failed to clock in on occasion. None of the others were disciplined. He also related that as a result of this incident, he had suffered "repercussions" including the loss of his supervisory position. CT Page 10830
The burden of proof is on the party seeking the modification.Connolly v. Connolly, 191 Conn. 468, 473, 464 A.2d 837 (1983);Kaplan v. Kaplan, 185 Conn. 42, 46, 440 A.2d 252 (1981): Richardv. Richard, 23 Conn. App. 58, 63, 579 A.2d 110 (1990); Meyer v.Meyer, 7 S.M.D. 49, 52 (1993); Taylor v. Taylor, 7 S.M.D. 43, 44 (1993); Yochum v. Yochum, 6 S.M.D. 75, 80 (1992); Noble v. Noble,
6 S.M.D. 31, 32 (1992); Berluti v. Berluti, 5 S.M.D. 377, 381 (1991); Dubitzky v. Dubitzky, 5 S.M.D. 261, 271 (1991); Monahanv. Monahan, 4 S.M.D. 223, 227 (1990). "That party must demonstrate that continued operation of the original order would be unfair or improper." Harlan v. Harlan, 5 Conn. App. 355, 357,496 A.2d 129 (1985); Morris-Littlefield v. Littlefield, 7 S.M.D. 105, 106 (1993); Taylor v. Taylor, 7 S.M.D. 43, 45 (1993); Yochumv. Yochum, 6 S.M.D. 75, 80 (1992); Noble v. Noble, 6 S.M.D. 31, 33 (1992); Kraynak v. Godfrey, 5 S.M.D. 250, 251 (1991);Romaniello v. Romaniello, 5 S.M.D. 87, 91 (1991); see alsoMcGuinness v. McGuinness, 185 Conn. 7, 10, 440 A.2d 804 (1981);Noce v. Noce, 181 Conn. 145, 149, 434 A.2d 345 (1980).
The defendant must prove not only that there has been a substantial change of circumstances but also that the reduction of income was not due to his own voluntary acts. Guidone v.Moschette, 8 S.M.D. 10 (1994). In the present case, that determination depends on this court's evaluation of the credibility of the witnesses. It is up to this court, as the trier of fact, to determine the credibility of witnesses and the weight to be given to their testimony. Griffin v. NationwideMoving Storage Co., 187 Conn. 405, 422, 446 A.2d 799 (1982);Riccio v. Abate, 176 Conn. 415, 418, 407 A.2d 1005 (1979); Raiav. Topehius, 165 Conn. 231, 235, 332 A.2d 93 (1973); Hepburn v.Hepburn, 8 S.M.D. 126, 133 (1994); Fretina v. Fretina, 5 S.M.D. 139, 142 (1991). The court has the right to accept part and disregard part of the testimony of any witness; Barrila v. Blake,190 Conn. 631, 639, 461 A.2d 1375 (1983): Rood v. Russo,161 Conn. 1, 3, 283 A.2d 220 (1971); Berluti v. Berluti, 5 S.M.D. 377, 382 (1991).
The court has difficulty with the defendant's credibility. In an earlier contempt proceeding, the defendant repeatedly testified under oath that he was unable to come up with any money to make up delinquencies in his support payments. However, after being held in contempt and incarcerated, he almost immediately paid a substantial purge amount of $3,300.00. His testimony is no more credible presently as pertains to his ability to pay the CT Page 10831 remaining delinquencies in his orders. His claims of desiring to pay support for his children, but only in a "fair" amount also ring hollow in view of the substantial periods during which he paid no support. The plaintiff testified that he has pledged to "fix it so that you won't get a penny". Although he denies this, the actual payment record gives credence to the plaintiff's claim. Although the defendant testified to making a "full time effort" in a "nationwide" job search, the documentation falls far short of that mark. The credibility of this claim is doubtful.
However, the court found John Fakis to be a very credible witness. His letter and testimony, apparently in the face of repercussions from his employer, establish that contrary to the company's claims, Tsirigotis had his permission to jog, and that he did make up the time after hours. His testimony supports neither the defendant's conspiracy theory that the company deliberately endeavored to force him out nor the plaintiff's theory that the defendant deliberately conspired to get himself fired to avoid child support. Rather, it suggests, and the court finds, that the company overreacted to what was a relatively minor rules violation of failure to clock in and out. This conclusion is supported by the testimony that others who failed to punch the clock were not even reprimanded. Fakis also stated that although he expected as a matter of "courtesy" that Tsirigotis would have told him specifically when he was leaving to go jogging, that he had never instructed him to do so. Fakis' continuing insistence that harsh punishment of Tsirigotis was not justified convinces this court that the defendant's loss of employment was not self-contrived. Therefore, the defendant has proved a substantial change of circumstances.
The guidelines would indicate a support order of $11.00 per week based on the raw figures of the defendant's financial affidavit. The court finds, however, that it must deviate from the guidelines figure because it finds that the defendant has a substantially higher earning capacity.
It is well established that a court may consider a party's earning capacity rather than actual income in computing a support order. Johnson v. Johnson, 185 Conn. 573, 576, 441 A.2d 578
(1981); Miller v. Miller, 181 Conn. 610, 611-12, 436 A.2d 279
(1980); Siracusa v. Siracusa, 30 Conn. App. 560, 566, 621 A.2d 309
(1993); Carey v. Carey, 29 Conn. App. 436, 440, 615 A.2d 516
(1992); Hart v. Hart, 19 Conn. App. 91, 94, 561 A.2d 151 (1989);Kimery v. Kimery, 9 S.M.D. 54, 57 (1995); Mayo v. Mayo, 9 S.M.D. CT Page 10832 28, 29 (1995); Hay v. Hay, 8 S.M.D. 51, 54 (1994); Guidone v.Moschette, 8 S.M.D. 10, 11 (1994); Webster v. Webster, 8 S.M.D. 4, 5 (1994); Campbell v. Scott, 7 S.M.D. 8, 12, 8 CSCR 507, 11
Conn.Fam.L.J. 71 (1993); Bardsley v. Bardsley, 6 S.M.D. 112, 116 (1992); Ouellette v. Ouellette, 6 S.M.D. 83, 85 (1992).
"The application of an earning capacity determination is not limited to the situation of a voluntary termination of prior employment. Johnson, Siracusa, Hay, Campbell v. Scott, andBardsley, supra. The child support guidelines provide for deviation where the court finds "[o]ther financial resources available to a parent." Conn. State Regs. § 46b-215a-3-(b)(1). A parent's earning capacity is specifically included in this subsection. Id., (B)." Kimery v. Kimery, 9 S.M.D. 54, 57 (1995););Hepburn v. Hepburn, 8 S.M.D. 126, 130 (1994).
The defendant is a skilled engineer. He holds a B.S. from Lowell Tech and an M.S. in mechanical engineering from the University of Massachusetts. Prior to employment at Electric Boat he held positions at Teledyne, Burns Roe, Inc., Westinghouse, Bechtel Corp., and United Engineers and Constructors. His earnings ranged from $40,000 to $53,000 per year. He has security clearance from both the Department of Defense and the Department of Energy. Mr. Fakis describes his technical skills as "exceptional". (Defendant's Exhibits 13, 16; Plaintiff's Exhibits 19-22.)
This court does not find it believable that a person with such credentials must be relegated to a part-time security job some eight months after his departure from Electric Boat. Although there is some evidence of a job search (Defendant's Exhibits 11, 13) and utilization of a placement service (Defendant's 12), the defendant has neither substantiated his claim to be engaged "full time" in a job search nor explained his failure to follow up on such obvious possibilities as Foxwoods Casino. The court finds the defendant's earning capacity to exceed $32,000 per year, which would justify a support order of at least $165 per week.
The motion to modify is granted. The order is modified to $165.00 per week unallocated support for two minor children plus $15.00 per week on the arrearage, making a total weekly order of $180.00. Immediate wage withholding is ordered. Because the motion to modify was not served pursuant to General Statutes § 52-50, the court may not grant the motion retroactively. CT Page 10833Shedrick v. Shedrick, 32 Conn. App. 147, 151, 627 A.2d 1387
(1993). Accordingly, the modification is effective September 10, 1995.
The hearing also addressed the plaintiff's motion for contempt (#200.00). Despite repeated orders from the bench to comply with the periodic order, the defendant has failed to do so. While the modification results in a reduction of the order, the defendant has paid substantially less than the modified order. He has not proven an inability to pay the periodic order or a lump sum. His claim of inability to pay is not credible, particularly in view of the previous contempt in May of this year, when, after similar claims of inability to pay, he purged himself of a $3,300 lump sum within hours of incarceration. He clearly has sources of assistance, including, but not limited to Ms. Payne and his sister and brother-in-law in Virginia. Accordingly, the court orders that he comply fully and timely with the modified periodic order, and additionally, pay the arrearage in full on or before October 18, 1995. Counsel for the defendant may contact the Support Enforcement Division to determine updated figures on the claimed arrearage. The contempt motion is continued to October 18, 1995, and the defendant is ordered to appear on that date.
The plaintiff's motion for counsel fees (#199.00) is continued to the same date. Plaintiff's counsel shall provide a bill or statement to defendant's counsel at least ten days prior to the hearing date.
BY THE COURT
Harris T. Lifshitz Family Support Magistrate