RICHARD OPOTZNER ET AL. *v*. WAYNE BASS ET AL.
(AC 19563)

Landau, Spear and Daly, Js.

Argued January 11—officially released May 29, 2001

*Howard A. Jacobs*, with whom were *Alinor C. Sterling* and, on the brief, *William F. Dow III*, for the appellants (plaintiffs).

*Paul D. Williams*, with whom were *Lawrence A. Ouellette, Jr.*, and, on the brief, *Rene Gerard Martineau*, for the appellees (defendants).

*Opinion*

LANDAU, J. The plaintiffs, Richard Opotzner and Florence Opotzner,[1] appeal from the judgment of the trial court rendered following the denial of their motion to set aside the verdict. On appeal, the plaintiffs claim that the trial court improperly (1) instructed the jury, (2) excluded evidence and (3) failed to grant their motion to set aside the verdict. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On January 7, 1996, Richard Opotzner and the defendant Wayne Bass[2] were each operating motor vehicles in a southerly direction on Pershing Drive in Ansonia. Opotzner stopped his vehicle and waited for an opportunity to turn left. At that moment, Bass' vehicle struck Opotzner's vehicle from behind. The accident was relatively minor. Opotzner reported the accident and told a police officer that he was not injured. More than two weeks later, Opotzner sought medical treatment for neck, leg and arm pain that he claimed was caused by the accident. Opotzner worked and received treatment for pain for several months following the accident. In September, 1996, one of Opotzner's physicians performed surgery in an attempt to relieve Opot-

---

[1] The plaintiffs are husband and wife. Florence Opotzner claimed a loss of consortium as a result of the her husband's injuries. Opotzner as used in this opinion refers only to Richard Opotzner.

[2] The other defendants are the Evangel Temple Church of God in Christ, Inc., and the Ford Motor Credit Company, which leased to the church the motor vehicle that was operated by Bass.

zner's pain. Opotzner claimed that the surgery was relatively unsuccessful and he did not return to work. Opotzner eventually claimed that, as a result of the accident, he suffered from a variety of ailments, including traumatic brain injury, chronic pain and depression. The defendants claimed that Opotzner had preexisting medical conditions that could have caused his chronic pain and depression.

The primary issue of contention during the trial was whether the alleged injuries were caused by the accident. The jury found that they were and awarded the plaintiffs $5400 in damages. Other facts will be discussed where relevant.

I

The plaintiffs claim that the court improperly instructed the jury regarding (1) whether adverse inferences could be drawn from the plaintiffs' introduction of medical reports as evidence of causation rather than medical testimony, (2) the burden of proof for future pain and physical impairment, (3) the credibility of the witnesses and (4) comparative negligence.

"Our standard of review concerning claims of instructional error is well settled. [J]ury instructions must be read as a whole and . . . are not to be judged in artificial isolation from the overall charge. . . . The whole charge must be considered from the standpoint of its effect on the jurors in guiding them to a proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . The instruction must be adapted to the issues and may not mislead the jury but should reasonably guide it in reaching a verdict. . . . We must review the charge as a whole to determine whether it was correct in law and sufficiently guided the jury on the issues presented at trial. . . .

"Our standard of review on this claim is whether it is reasonably [possible] that the jury was misled. . . .

The test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Therefore, jury instructions need not be exhaustive, perfect, or technically accurate. Nonetheless, the trial court must correctly adapt the law to the case in question and must provide the jury with sufficient guidance in reaching a correct verdict." (Internal quotation marks omitted.) *Marshall* v. *O'Keefe*, 55 Conn. App. 801, 804–805, 740 A.2d 909 (1999), cert. denied, 252 Conn. 918, 744 A.2d 438 (2000).

## A

The plaintiffs first claim that the court improperly failed to instruct the jury that, pursuant to General Statutes § 52-174 (b),[3] it could not draw adverse inferences from the plaintiffs' introduction of medical reports as evidence of causation in lieu of medical testimony. We disagree.

The following additional facts are necessary for our resolution of this claim. In support of their position that the accident caused Opotzner's injuries, the plaintiffs introduced medical reports. The physicians who authored the reports did not testify. After the trial, the plaintiffs submitted a request to charge the jury that (1) the use of the medical reports as opposed to live testimony was allowed by statute and (2) adverse inferences could not be drawn against the plaintiffs because the physicians that authored the reports did not testify.[4]

---

[3] General Statutes § 52-174 (b) provides in relevant part: "In all actions for the recovery of damages for personal injuries or death . . . [t]he use of [a medical] report or bill in lieu of the testimony of such treating physician . . . shall not give rise to any adverse inference concerning the testimony or lack of testimony of such treating physician . . . ."

[4] The plaintiffs' request to charge was as follows: "A Connecticut statute provides that in all actions for the recovery of damages for personal injuries, any party offering in evidence a signed report of any treating physician may have the report admitted into evidence as a business entry. You will recall

In its charge to the jury, the court addressed whether inferences could be drawn because a party introduced reports in lieu of live testimony: "A number of reports and records, and written and documentary kinds of exhibits will be presented, they've been entered into evidence and you will have them with you in deliberations. Now, those should be evaluated by you with the same principles in mind. An exhibit or a report or a record should neither be especially believed, nor especially disbelieved merely because it is a report or an exhibit as opposed to oral testimony. There should be no inferences made for or against a party merely because reports are offered. And I'd add in that context that it is perfectly permissible to read from exhibits as has been done during the trial."

Applying our standard of review, we conclude that when read as a whole, the court's charge was correct in law and it was sufficient to guide the jury regarding the issue of the plaintiffs' use of medical reports in lieu of live testimony. More specifically, the charge complied with the provisions of § 52-174 (b) in that it instructed the jury that "no inferences [could be] made for or against a party merely because reports are offered."

The plaintiffs, however, argue that their proposed charge should have been given because the court's charge did not instruct the jury that (1) the use of medical reports in lieu of medical testimony is permitted pursuant to § 52-174 (b) and (2) no adverse inferences could be drawn from the plaintiffs introduction of *medical reports* concerning causation rather than live medical testimony. "[A] refusal to charge in the

that a number of medical reports were entered into evidence and read to you. The use of any such report in lieu of the testimony of such treating physician is proper and allowed by statute. You cannot draw any inferences against the party offering such report into evidence concerning the fact that the doctor or doctors did not testify at the trial."

exact words of a request will not constitute error if the requested charge is given in substance." (Internal quotation marks omitted.) *Rossi* v. *Stanback*, 36 Conn. App. 328, 332, 650 A.2d 920 (1994). Here, the substance of the requested charge was given because the court instructed the jury that no inferences could be drawn against a party "merely because reports [were] offered."

### B

The plaintiffs next claim that the court improperly instructed the jury on the burden of proof for future noneconomic damages and that the jury was misled by the instruction. Specifically, the plaintiffs argue that the court improperly instructed the jury that future noneconomic damages needed to be proven by a reasonable certainty rather than by a reasonable probability. We disagree.

The following additional facts are necessary for our resolution of this claim. The plaintiffs submitted a request to charge the jury for noneconomic damages.[5] During its charge, the court instructed the jury that for it to give an award for future damages it "must be satisfied with a *reasonable degree of certainty* that the results for which [it was] attempting to compensate [Opotzner] are *reasonably probable*."[6] In a number of

---

[5] The plaintiffs' request to charge for future noneconomic damages provided in relevant part: "As for these future damages, you must compensate him as best you can in your honest judgment for such results, in the nature of pain, suffering, incapacity and physical impairment, as are reasonably probable. You must be satisfied to a reasonable degree of probability that the results for which you are attempting to compensate him are reasonably probable. And insofar as you find that it is reasonably probable in the future that he will suffer pain, that he will undergo suffering of any kind, that he will suffer physical or mental impairment, you will attempt to compensate him for those things."

[6] The court charged in relevant part: "Now, as to the future, as in the past, you must, as well as you can in your honest judgment, compensate the plaintiff for such results in the nature of pain, suffering, incapacity and physical impairment as are *reasonably probable*. It's not a matter of speculation, it's not a matter of mere guesswork, you must be satisfied with a *reasonable degree of certainty* that the results for which you are attempting

other parts of the charge, however, the court instructed the jury that the burden of proof for future noneconomic damages was a reasonable probability.

We agree with the plaintiffs' assertion that the court's use of the phrase reasonable degree of certainty in its instruction for future noneconomic damages was improper. See *Cross* v. *Huttenlocher*, 185 Conn. 390, 395, 440 A.2d 952 (1981) (burden of proof for future noneconomic damages is reasonable probability). We conclude, however, that the court's use of the phrase did not mislead the jury. "[J]ury instructions must be read as a whole and . . . are not to be judged in artificial isolation from the overall charge." (Internal quotation marks omitted.) *Marshall* v. *O'Keefe*, supra, 55 Conn. App. 804. When giving a lengthy jury instruction, the court may have a slip of the tongue. *Thames River Recycling, Inc.* v. *Gallo*, 50 Conn. App. 767, 787, 720 A.2d 242 (1998), citing *State* v. *Delosantos*, 13 Conn. App. 386, 391, 536 A.2d 609 (1988). The improper instruction is, however, "harmless if, viewed in the context of the charge as a whole, there is no reasonable possibility that the jury was misled." (Internal quotation marks omitted.) *Thames River Recycling, Inc.* v. *Gallo*, supra, 787 (improper instruction harmless where court once incorrectly stated law of negligence and unfair trade practices but twice stated law correctly); see also *State* v. *Delosantos*, supra, 391. Here, the court cited an improper standard in one part of its charge. The court also repeatedly cited the proper standard during the rest of its charge. Examining the charge as a whole,

---

to compensate him are *reasonably probable*. It is not a question which you are to determine based on a possibility of nonimprovement. It is a question you must, as well as you can, solve upon the basis of results which are *reasonably probable* to occur in the future. Insofar as you find that it is *reasonably probable* in the future that he will suffer pain or undergo any suffering that will be incapacitated from carrying on labors, that [he] will suffer physical or mental impairment, you will attempt to compensate him for those things."

we conclude that it is not reasonably possible that the jury was misled. The court's improper charge was, therefore, harmless.

## C

The plaintiffs also claim that the court improperly charged the jury regarding the credibility of witnesses. Specifically, the plaintiffs argue that the court improperly instructed the jury that if it found that a witness intentionally or wilfully lied about a fact, it could choose to disregard all of that witness' testimony. We disagree.

In its charge, the court instructed the jury that it was the jury's function to determine "[t]he credibility of [the] witnesses and the weight to be given their testimony . . . ." The court also instructed the jury that if it concluded that "a witness has not only testified falsely, but has done so intentionally or wilfully, this fact casts a serious doubt on all testimony and you may, but don't have to, conclude that you cannot accept any of the testimony. . . . And even if you should find that someone gave false testimony as to some matters, you may find that as to other matters the testimony was worthy of acceptance by you. It's a matter for, you should regard all the testimony of a witness and believe those parts of it which you think in your exercise of judgment and discretion you should believe."

Connecticut recognizes the maxim "falsus in uno, falsus in omnibus" as a permissive instruction.[7] *Raia* v. *Topehius*, 165 Conn. 231, 234–35, 332 A.2d 93 (1973). The plaintiffs argue that where, as is the case here, the instruction is given, the jury must be instructed that it

---

[7] "This maxim expresses the general principle of law that it is the prerogative of the jury to discredit the entire testimony of a witness if it determines the witness intentionally testified falsely in some respect." *State* v. *Stevenson*, 53 Conn. App. 551, 577 n.21, 733 A.2d 253, cert. denied, 250 Conn. 917, 734 A.2d 990 (1999), citing *State* v. *Smith*, 201 Conn. 659, 666, 519 A.2d 26 (1986).

can disregard all of a witness' testimony only if that witness has testified falsely as to a *material* issue.[8]

The falsus in uno, falsus in omnibus instruction simply "deals with the weight and credibility of testimony . . . . It serves as an aid to the jury in weighing and sifting the evidence. . . . It has long been an established legal principle in this state that the trier of fact has the right to accept part and disregard part of the testimony of a witness. . . . [I]t is for the jury as the trier of fact to determine the credibility of witnesses and what testimony they believe and what they consider is unworthy of credence. The approved instruction on the maxim, in its permissive form, is at best merely advisory. . . . Under the proper instruction the jury may or may not, as they see fit, reject all the testimony of the witness, and act on their own judgment as to the value and credibility of the testimony." (Citations omitted; internal quotation marks omitted.) Id., 235–36. Under a general instruction concerning the credibility of the witnesses, however, the jury is also instructed that it may or may not, in its judgment, reject all of a witness' testimony. See id., 236. "Instruction on the maxim is a matter resting in the sound discretion of the trial judge." Id.

Here, the court advised the jury that if it found that a witness "gave false testimony . . . you should . . . believe those parts of it which you think in your exercise of judgment and discretion you should believe." The court's instruction was not an incorrect statement of the law, as "it is well established that the evaluation of a witness' testimony and credibility is wholly within

---

[8] In support of their position, the plaintiffs cite a number of cases in which our appellate courts have discussed the maxim and have stated that it applies where a witness has testified falsely as to a material fact. See, e.g., *Raia* v. *Topehius*, supra, 165 Conn. 235; *Rogers* v. *Northeast Utilities*, 45 Conn. App. 23, 26, 692 A.2d 1301, cert. denied, 241 Conn. 924, 696 A.2d 1266 (1997); *Young* v. *Falk*, 34 Conn. App. 852, 855, 643 A.2d 1314 (1994).

the province of the trier of fact." *Szczerkowski* v. *Karmelowicz*, 60 Conn. App. 429, 434, 759 A.2d 1050 (2000). Furthermore, the court has broad discretion regarding the instruction on the falsus in uno, falsus in omnibus maxim. *Raia* v. *Topehius*, supra, 165 Conn. 236. Applying our standard of review, we conclude that the it is not reasonably possible that the jury was misled by the court's instruction regarding the credibility of the witnesses and false testimony.

## D

The plaintiffs' final claim with respect to the court's charge is that the court improperly instructed the jury on the issue of comparative negligence. Specifically, the plaintiffs argue that the court improperly failed to instruct the jury that any negligence on the part of Opotzner must have been the proximate cause of his injuries. We disagree.

The following facts are necessary for our resolution of this claim. The plaintiffs submitted a request to charge the jury on the issue of comparative negligence.[9] Specifically, the plaintiffs requested that the court instruct the jury that to reduce the amount of the plaintiffs' recovery, it must find that any comparative negli-

---

[9] The plaintiffs' request to charge was as follows: "The defendants have alleged in a special defense that any injuries or damages suffered by the plaintiff Richard Opotzner were caused in whole or in part by his own negligence or carelessness. More specifically, they have alleged that 'he failed to properly and timely signal his intention to turn left on the roadway and/or in violation of § 14-242 of Connecticut General Statutes.' If you find that the plaintiff Richard Opotzner was negligent in one or more of the ways alleged by the defendants, you should determine whether any such negligence was a causal factor in bringing about the injuries to Richard Opotzner, or whether such negligence was a mere condition and not a proximate cause of Richard Opotzner's injuries. If you find that any negligence of Richard Opotzner was a condition and not a causal factor in bringing about his injuries, such negligence shall not bar Richard Opotzner's recovery. You should not reduce the amount of any verdict rendered in favor of Richard Opotzner by any negligence that was a mere condition and not a proximate cause of his injuries."

gence on the part of Opotzner was the "proximate cause" of his injuries. In its instructions on comparative negligence, the court did not use the phrase proximate cause. Instead, the court used the phrase "substantial factor" to describe the standard of causation.[10]

Our Supreme Court "has defined proximate cause *as [a]n actual cause* that is a *substantial factor* in the resulting harm . . . ." (Emphasis in original; internal quotation marks omitted.) *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 606, 662 A.2d 753 (1995); see also *Paige* v. *St. Andrew's Roman Catholic Church Corp.*, 250 Conn. 14, 25, 734 A.2d 85 (1999) (test of proximate cause is whether defendant's conduct is substantial factor in bringing about plaintiff's injuries).

Here, the court instructed the jury that it must determine whether Opotzner's "negligence was a substantial factor" in bringing about the accident and his resulting injuries. "That the court did not adopt the [plaintiffs'] requests verbatim does not afford a ground for reversal so long as the jury [was] adequately apprised of the relevant issues." *Cross* v. *Huttenlocher*, supra, 185 Conn. 394. Proximate cause is " '[a]n actual cause that is a substantial factor in the resulting harm . . . .' " *Stewart* v. *Federated Dept. Stores, Inc.*, supra, 234 Conn. 606. The court's instruction was, therefore, sufficient to guide the jury in reaching a correct verdict. See *Marshall* v. *O'Keefe*, supra, 55 Conn. App. 805.

## II

The plaintiffs next claim that the court abused its discretion by improperly redacting portions of a medical report from evidence. We disagree.

[10] The court instructed on comparative negligence in relevant part as follows: "As to the claim that . . . Opotzner was negligent and caused injuries . . . Bass has the burden of proof by a preponderance of the evidence. . . . [Y]ou would determine whether . . . Opotzner, or let me rephrase that, whether . . . Bass has proved that . . . Opotzner was negligent in one or more of the ways alleged, and if so, whether that negligence was a substantial factor in causing the accident."

The following additional facts are necessary for our resolution of this claim. In January, 1997, the plaintiffs disclosed that they intended to call Joel S. Zaretzky, the plaintiffs' family physician, as an expert witness. At the time of the disclosure, Zaretzky was to offer his opinion regarding Opotzner's neck and arm pain, back pain, and muscle, ligament and joint injuries. Evidence was scheduled to begin in the trial on January 11, 1999. Zaretzky drafted a report dated January 6, 1999, and addressed it to the plaintiffs' counsel. The report included, inter alia, Zaretzky's opinion that Opotzner suffered from a traumatic brain injury, chronic pain and depression. The report also stated that there was a causal relationship between the accident and Opotzner's medical conditions. On January 7, 1999, the plaintiffs' counsel disclosed the report to counsel for the defendants. On January 11, 1999, the defendant Ford Motor Credit Company (Ford) filed a motion in limine to preclude the report from evidence on the grounds that the report was not filed in a timely manner in violation of Practice Book §§ 13-4 (4)[11] and 13-15.[12] Ford argued that it would be prejudiced by the introduction of the report at such a late date because there was no opportunity to depose Zaretzky and because Zaretzky would not be subject to cross-examination. The court denied Ford's motion and allowed the report to be

[11] Practice Book § 13-4 (4) provides in relevant part: "[A]ny plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within a reasonable time prior to trial. . . ."

[12] Practice Book § 13-15 provides in relevant part: "If, subsequent to compliance with any request or order for discovery and prior to or during trial, a party discovers additional or new material or information previously requested and ordered subject to discovery or inspection or discovers that the prior compliance was totally or partially incorrect or, though correct when made, is no longer true and the circumstances are such that a failure to amend the compliance is in substance a knowing concealment, that party shall promptly notify the other party . . . ."

admitted. The court did, however, redact portions of the report in which Zaretzky offered his opinion rather than facts and those portions of the report that were more prejudicial than probative. Specifically, the court redacted Zaretzky's opinion that Opotzner suffered from a traumatic brain injury, that he was suicidal and that he was a broken man.

Our standard of review is well established. "Generally, evidence is admissible to prove a material fact that is relevant to the cause of action alleged by the plaintiff. . . . It is a well established principle of law that the trial court may exercise its discretion with regard to evidentiary rulings, and the trial court's rulings will not be disturbed on appellate review absent abuse of that discretion. . . . Sound discretion, by definition, means a discretion that is not exercised arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law . . . . And [it] requires a knowledge and understanding of the material circumstances surrounding the matter . . . . In our review of these discretionary determinations, we make every reasonable presumption in favor of upholding the trial court's ruling." (Citation omitted; internal quotation marks omitted.) *Washington* v. *Christie*, 58 Conn. App. 96, 99–100, 752 A.2d 1127, cert. denied, 254 Conn. 906, 755 A.2d 884 (2000).

Not only was Zaretzky's report created and disclosed on the eve of trial, it contained new opinions regarding Opotzner's medical conditions. The court exercised its discretion and redacted those portions of the report in which Zaretzky offered his opinions and those portions of the report that were more prejudicial than probative. In making discretionary evidentiary rulings, the court is charged with doing what is "right and equitable under the circumstances and the law . . . ." (Internal quotation marks omitted.) Id., 100. If the court had admitted the entire report on the eve of trial, the defendants

would have been prejudiced because they did not have an opportunity to depose Zaretzky regarding his opinions. We, therefore, conclude that under the circumstances of the case the court did not abuse its discretion by redacting portions of the report.

## III

The plaintiffs' final claim is that the court improperly denied their motion to set aside the verdict because the jury could not reasonably have found that the plaintiffs were entitled to only $5400 in damages. We disagree.

Our standard of review of the trial court's denial of a motion to set aside the verdict is clear. We review the court's decision under an abuse of discretion standard. *Card* v. *State*, 57 Conn. App. 134, 138, 747 A.2d 32 (2000). More specifically, we "consider the evidence in the light most favorable to the prevailing party, according particular weight to the congruence of the judgment of the trial judge and the jury, who saw the witnesses and heard their testimony. . . . The verdict will be set aside and judgment directed only if we find that the jury could not reasonably and legally have reached their conclusion. . . . While it is the jury's right to draw logical deductions and make reasonable inferences from the facts proven . . . it may not resort to mere conjecture and speculation. . . . If the evidence would not reasonably support a finding of the particular issue, the trial court has a duty not to submit it to the jury. . . . *Sheridan* v. *Desmond*, 45 Conn. App. 686, 691, 697 A.2d 1162 (1997)." (Citations omitted; internal quotation marks omitted.) *Sandella* v. *Dick Corp.*, 53 Conn. App. 213, 218–19, 729 A.2d 813, cert. denied, 249 Conn. 926, 733 A.2d 849 (1999).

Much of the dispute at trial centered on whether the accident caused Opotzner's injuries. The plaintiffs introduced evidence, which if believed, could have supported a substantial damages award. The defendants,

however, countered with evidence that tended to show that the accident was relatively minor, that Opotzner was not injured in the accident, that his claimed injuries were actually caused by preexisting medical conditions and that the accident did little to exacerbate those conditions. Where an issue is disputed, it is the jury's job to weigh the evidence and to determine the credibility of conflicting testimony. *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, 216 Conn. 40, 58, 578 A.2d 1054 (1990). After a review of the evidence, we conclude that the jury reasonably could have concluded that the plaintiffs were entitled to only $5400 in damages. The court did not, therefore, abuse its discretion in denying the plaintiffs' motion to set aside the verdict.

The judgment is affirmed.

In this opinion the other judges concurred.