MEMORANDUM OF DECISION
This case presents petitions for the termination of the parental rights of Lisa B. to her three children and of Charles T. to his son, Jeffrey T., and of David B., Sr. to David B., Jr. and Devan B. The children are now ages eleven, ten and four respectively. These children came into the care of the Department CT Page 1101 of Children and Families, hereafter the "Department", on April 12, 1995. They were removed from their parents due to their parents' cocaine and alcohol addictions, domestic violence in the home and the resulting neglect of the children. The children were adjudicated neglected on September 26, 1995 and committed to the care and custody of the Department. The oldest two children remain in foster care with their maternal grandmother and her husband, who I wish to adopt them. The youngest is in foster care and adoptable.
The Department seeks this termination on the grounds that the children were previously adjudicated neglected and that each parent has failed to achieve such degree of personal rehabilitation as would encourage the belief that, within a reasonable time, considering the age and needs of the children, such parent could assume a responsible position in the life of the children. Connecticut General Statutes § 17a-112
(c)(3)(B). Further the Department alleges that by the continuing drug and alcohol use of Lisa B. and David B., Sr. after the children's commitment, the parents have committed acts of omission and commission in violation of General Statutes §17a-112 (c)(3)(C) in that the children have been denied the care, guidance, or control necessary for the children's physical, educational, moral or emotional well being. The father of the oldest child, Jeffrey, consented to the termination of his rights to Jeffrey on January 9, 1998. The court found that his consent was voluntarily and knowingly made with the advice and assistance of competent legal counsel and with an understanding of the consequences of his consent to such court action. His attendance in court at further proceedings in court was excused. The pleadings were amended to allege his consent.
The court finds that all the parents were duly served, have appeared and have court appointed attorneys. Lisa B., and her husband, David B., Jr. did not appear at trial, although both their counsel were present. The court finds from the testimony of the Department social worker, Lynn Alston, that the Department's efforts to locate the parents in the months before trial after their move to Florida were reasonable and that both had notice not only of the trial, but the dates it had been scheduled. The court further finds that there are no other pending proceedings effecting the custody of these three children. The court, having reviewed the verified petition, the social studies, and the various documents entered into evidence, as well as the prior record of court proceedings, of which it took judicial notice, CT Page 1102 and having heard the testimony of Lynn Alston, makes the following factual findings and reasonable inferences supported by those findings:
The mother, Lisa B., is now twenty-nine years old and had a troubled history as an adolescent. She did not complete high school and began using drugs and alcohol while in school. She married Charles T., Jeffery's father in 1986 some few months before the child's birth. She was divorced from him just a year later. Charles T. thereafter had no regular contact with his son.
On November 9, 1987, Lisa married David B., Sr., a month before her second child, David B., Jr., was born. Domestic violence was a hallmark of this relationship, occurring even before their marriage while they were dating. Through the years, by her own admission, David B., Sr. has hit her in the head with a plate, kicked her in the stomach while she was pregnant with their youngest child, Devan, beaten her regularly at times in sight of the children, broken her nose and teeth and in the more recent past pushed her and hit her with the back of his hand many times. She and David led a chaotic and turbulent life. Neither of them had steady employment or stable housing. The family moved frequently and the children changed schools constantly. As would become apparent, due to their alcohol and drug addiction, they were unable to provide minimal care for their children.
Prior to the events which precipitated the placement of the children in foster care in 1995 there were a number of referrals of the family to the Department which noted chaotic and poor living conditions and frequent absences from school. Although there is no doubt from the evidence that the parents were cocaine and alcohol addicted prior to 1995 on April 12, 1995 after a referral from the school and investigation by the Department, Lisa admitted that she was cocaine-addicted. On that day, the Department invoked a ninety-six hour hold and secured an order of temporary custody on April 13, 1995. (Potter, J.) Lisa also acknowledged that the domestic violence the children witnessed in the home had caused them great emotional pain. The regular physical abuse of their mother by David B., Sr., left its mark on the children. As the oldest child reported a short time after being placed in care, "he hits and he's on drugs and I don't want to see him."
The next months and years were characterized by the parents' fitful and marginal attendance at various drug and alcohol CT Page 1103 treatment programs, from which without exception they were discharged for failing to attend and participate. The summary of facts (Respondent's Exhibit 4) catalogues an heroic effort on the part of the Department as well as the State Probation Department to provide services to two individuals who were bent on continuing to lead a drug-addicted, destructive life. Services were offered for literally years after it was obvious that neither parent demonstrated any desire to benefit from them. Lisa admitted to domestic violence and abuse at the hands of her husband, but refused, despite days spent in shelters and receiving counseling, to leave him, either for the sake of herself or her children. She received drug and alcohol counseling at the Care Clinic, at Boneski Treatment Center and at SCAAD. There were referrals to the Women's Center and the Women's Group of Groton, the Danielson shelter as well as other services.
On four separate occasions, service contracts were agreed to and signed by Lisa and David, making it painfully clear what was required of them to reunify with their children; keep all appointments, secure long term drug and alcohol treatment and complete that treatment, keep their whereabouts known to the department, secure housing and regular income, and visit regularly with their children. None of the required actions were reliably taken by either parent. Indeed, Lisa's statement on one of the first occasions she left the Care Clinic program that she would do whatever she wanted with Mr. B., was prophetic. That is what she has done, without thought or concern about her children and their needs.
As of the filing of the petitions for the termination of their parental rights to her children on May 13, 1997, neither parent had even minimally complied with any of the requirements put in place by the Department, despite the many services the department provided which included referrals to programs, transportation, efforts at housing assistance, visitation and the services at one time of a parent aide. And by September of 1997, both parents had left the state, contacting the Department only once from Florida. None of the children have seen them since that time and visitation had been spotty at best during the entire time the children have been in foster care.
David B., Sr., like his wife, did not complete high school. While he has had more employment than she, during the last three years of the Department's involvement with the family, he has not held a job. The record reflects that he has been arrested on CT Page 1104 several occasions for domestic violence, possession of cocaine, violation of probation and larceny. He, like his wife, has been in and out of treatment centers, never completing any and being terminated regularly for non-compliance and lack of commitment. He has minimized the amount of physical abuse he inflicted on his wife and attributes much of his behavior to his ongoing drug addiction.
At the time the children of this family came into foster care, they exhibited the consequences of the chaotic life they had led. Jeffrey and David were diagnosed with Post Traumatic Stress Disorder. They each have received counseling at the Child Guidance Clinic and have both progressed to the point that they function well without the present need for further intervention. Initially they were both behind at school, in part due to the many absences. Now fortunately they are both doing very well in school and are active in the Boy Scouts. Both are at grade level and no longer require special education services. Each of the boys is bonded to the other and their youngest sibling, Devan. Both of the two older boys are clear that they do not want to see David B., Sr. They no longer trust their mother and do not want to live with her. They wish to remain with their grandmother and her husband, who have worked hard to stabilize these children and to maintain a loving home for them.
The youngest child, Devan, was just eighteen months old when he came into foster care. He was found to be significantly developmentally delayed and completely un-nurtured. Apparently, given his parent's unavailability, his oldest brother often cared for him as best he was able. In foster care he has improved over time, although initially he required constant holding and one-on-one care. He has access to his older siblings weekly and is bonded to them. Devan does not ask about his parents or talk about them, as he has spent more than half his life in foster care, seeing his biological parents only sporadically. The Department plans to secure a foster home for him where he can have contact with his older siblings.
ADJUDICATION
Respondents argue that important constitutional rights are at stake in the termination of their rights to their children. There is no question that severing family ties implicates serious constitutional concerns. The United States Supreme court held inSantosky v. Kramer, 455 U.S. 745, 753 (1982) that: CT Page 1105
"The fundamental liberty interest of natural parents in the care, custody and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life."
But a parent's constitutional rights do not exist in isolation without reference to the rights of others in the family, community and the larger society in which the individual functions. And in particular, they do not override a child's right to be safe and to grow and to be nurtured in a supportive environment. "The government's function in seeking to terminate parental rights and place a child in an adoptive home is an aspect of the state's role as parens patriae. It is important to note in this relation that the ultimate standard underlying the whole statutory scheme regulating child welfare is the `best interest of the child.' In re Juvenile Appeal (Docket No. 10155),187 Conn. 431, 439 (1982). As set forth in Connecticut General Statutes § 17a-101 (a): "The public policy of this state is: To protect children whose health and welfare may be adversely affected through injury and neglect."
With respect to the statutory grounds for termination of parental rights, the court finds, by clear and convincing evidence, that as of May 13, 1997, based on their mother's drug and alcohol use, that all three children had been denied, by reason of acts of parental omission as well as commission, the care, guidance or control necessary for their physical, educational, moral and emotional well being as set forth in Connecticut General Statutes § 17a-112 (c)(3)(C). The court further finds by the clear and convincing evidence that those same allegations have been proven concerning David B., Sr. All children have suffered emotional harm as a result of their parents' ongoing behavior. In Re Kelly S., 29 Conn. App. 600,614, 616 A.2d 1161 (1992), In Re Sean H., 24 Conn. App. 135,144-145, 586 A.2d 1171, cert. denied, 218 Conn. 904, 588 A.2d 1078
(1991). The court further finds such circumstances had existed for an extended period of time in excess of one year prior to the date of the filing of the application for termination of parental rights.
Based on clear and convincing evidence, the court concludes that both parents had failed to achieve such a degree of personal CT Page 1106 rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of their children, they could assume a responsible position in the lives of their children. Connecticut General Statutes § 17a-112 (c)(3)(B). Neither parent was ever able to begin the process of drug rehabilitation to be able to regularly visit their children, let alone be rehabilitated as parents. The children were adjudicated neglected on September 26, 1995. More than two years have already passed since that date. These children simply cannot wait any longer for the rehabilitation of their parents as they each have immediate and strong needs for permanency.
"`Personal rehabilitation' as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent." In re Migdalia M. 6 Conn. App. 194,203, 504 A.2d 532 (1986). See also: In re Juvenile Appeal,1 Conn. App. 463, 477, 473 A.2d 795, cert. denied, 193 Conn. 802,474 A.2d 1259 (1984). There is not doubt that neither Lisa nor David has begun the process to accomplish such an outcome. Lisa's relationship to her children is neglectful and distant. Her two oldest boys cannot trust her and do not wish to see her. Her youngest does not speak of her. David B., Sr.'s relationship to the two youngest boys is also poor. What little visitation that did take place demonstrated his inability to focus on his children, even during supervised visitation. Rehabilitation within the foreseeable future is not likely. The court finds, based on the clear and convincing evidence, this ground had existed as to both parents for substantially longer than one year prior to the filing of the termination petitions on May 13, 1997.
REQUIRED FINDINGS
The court will make no findings regarding Charles T., the father of Jeffrey T., as same are not required due to his consent to the termination of his parental rights. The court makes the following factual findings based upon the clear and convincing evidence required by § 17a-112 (e):
1) Appropriate and timely services were provided by the Department of Children and Families, including a parent aid, counseling, drug and alcohol treatment referrals, transportation assistance, and visitation coordination. The services offered were extensive.
2) The court finds by clear and convincing evidence that the CT Page 1107 Department of Children and Families made reasonable efforts to reunify the family, given the situation and circumstances, as far as possible. There were heroic and repeated efforts made, only to have each such effort fail. Both parents received ongoing and significant services for reunification, but did not begin to take the steps necessary to rehabilitate themselves.
3) The Department set reasonable and realistic goals embodied in four separate service agreements in order to reunify the family. Neither parent was able to remain drug or alcohol free for any period of time. Both parents were unable to benefit to any degree from the programs they attended.
4) The feelings and emotional ties of the children with respect to the parents, any guardian of the person and any person who has exercised physical care, custody and control of the children for at least one year and with whom the children have developed significant emotional ties. All these children know their parents. Nonetheless, given the physical abuse they have witnessed, the physical neglect they suffered and the drug-addicted state of their parents, none wish any further contact with their parents. The two oldest are clearly bonded to their grandmother, who has provided them with the only stable home they have known. All three are connected to each other. The youngest, Devan, is doing well in his foster home placement.
5) Finding regarding the age of the children. Jeffrey is eleven years old, David is ten years old and Devan is four years old.
6) Finding regarding efforts of the parents to adjust their circumstances, conduct conditions to make it in the best interests of the children to return them to their home in the foreseeable future and (A) the extent to which the parents have maintained contact with the children as part of am effort to reunite the children with the parents, provided that the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communications with the guardian or other custodian of the children Both parents have made only minimal efforts to maintain contact with their children in an effort to reunite with them. Their visits have been sporadic and the quality of the visits that did take place often poor. Since they left the state in September, there have been no visits. The parents have been unable, as previously found, to adjust their conduct to make a CT Page 1108 return of the children to their parents feasible.
7) Finding regarding the prevention of the parents from having a meaningful relationship etc. No inappropriate conduct is noted. The Department has taken many steps to encourage both parents to have a meaningful relationship with their children.
DISPOSITION
Jeffrey, David and Devan have been in foster care for almost three years. Jeffrey and David need the stability and consistency that are provided by their loving relationship with their grandmother and the stable home she and her husband have maintained for them. Devan, who has been in a separate foster home for more than half his life, also has the same needs. Based upon the foregoing findings, the court determines that it is in the children's best interests that a termination of parental rights enter with respect to their mother, Lisa B. It is in Jeffrey's best interests that a termination of parental rights enter as to his father, Charles T., who has consented to such termination. Further it is in the best interests of David and Devan that a termination of parental rights enter with respect to their father, David B., Sr. and, accordingly, a termination of their parental rights is ordered. The Commissioner of the Department of Children and Families is hereby appointed the statutory parent. If the grandmother and her husband continue to be willing to adopt Jeffrey and David, it is the court's direction that they receive first consideration. A permanency plan for all three children shall be submitted within 90 days. A review plan for them shall be filed in accordance with state and federal Law.
Barbara M. Quinn, Judge Child Protection Session
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.] CT Page 1113