[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO OPEN JUDGMENT
The Plaintiff; Tina C., and the Defendant, Christopher H., commenced an on-going sexual relationship during February of 1993. Subsequently, the Plaintiff became pregnant, and the minor child in this matter, Tiffany C., was born to the Plaintiff on December 1993. CT Page 16694
The court file contains an Affirmation of Paternity executed by the Plaintiff on January 10, 1994. The court file also contains an Acknowledgment of Paternity along with the Waiver of Rights to a blood test, trial and attorney signed by the Defendant on March 8, 1994. These documents were filed at Waterbury Superior Court on March 11, 1994.
This file further reflects that the Defendant filed a "Motion for DNA Genetic Testing" on June 20, 1995, through his court-appointed attorney at the time. Said motion was not accompanied by a written requisite Motion To Open Judgment. See Cardona v. Negron, 53 Conn. App. 152,728 A.2d 1150 (1999). A review of the court file reveals that no action was taken on the Motion for DNA Genetic Testing.
Subsequently, the Defendant flied a "Motion for Modification to Decrease Child Support" on June 14, 1996. The court granted a reduction of the child support order to $10 per week on July 11, 1996. Thereafter, the court reinstated the original orders ($60 per week current support plus $10 per week on arrearages) on August 27, 1996.
Thereafter, the Defendant was served with a Motion for Contempt on October 27, 1999, with an initial court date of February 28, 2000. This file reflects that on March 14, 2000, the Defendant was found in contempt and incarcerated. He was released on or about April 10, 2000, upon payment of $1,000 partial purge.
The Defendant then filed a Motion to Open Judgment and a Motion For DNA Tests dated March 27, 2000, through his private attorney, Jack Senich.
The hearing on said Motion To Open Judgment was delayed until heard by this court on August 23, 2001. Transcripts were ordered and the Defendant's attorney filed a timely brief dated October 25, 2001. The attorney for the minor child and the state of Connecticut were allowed thirty days thereafter to file their respective briefs, but neither elected to do so.
Meanwhile, before the court had an opportunity to act upon said Motion To Open Judgment, the Plaintiff and the Defendant accomplished the completion of DNA paternity testing upon themselves and the child, obviously without an order from the Court. The results of the said DNA testing, as reflected in the laboratory report dated May 8, 2000, excludes the Defendant as the biological father of Tiffany.
The Plaintiff testified that she had sexual relations with another man she can only identify as "Peter", on one occasion only, during January, 1993. When pressed for the last name of this man, she responded: "I have no idea." (T., Morning Session. p. 14). She further testified that she CT Page 16695 had an exclusive sexual relationship with the Defendant from February, 1993, through the time of conception of this child. She states that she thought the child was conceived during March, 1993.
The Defendant testified that he and the Plaintiff never have resided together, and that he never has resided with Tiffany. The Defendant apparently spent much more time with another girlfriend, with whom he has produced two children. One of these children was born five days after Tiffany was born. The testimony of each of the parties suggests that the Defendant would visit with the Plaintiff and the child on a more regular basis if things were not going well between he and his other girlfriend; he would visit less frequently if things were going well.
The Defendant further confirmed that he was incarcerated for criminal matters from August, 1995 to April, 1996, from May, 1997 to May, 1999, and again from December, 2000 to the present time. Thus, since Tiffany was born, he has spent about 45 months in prison, i.e., almost one-half of the child's life. The Plaintiff testified that she took Tiffany to visit with the Defendant on a regular basis particularly during his second period of incarceration. The Defendant testified that the visits were not very frequent, and that he eventually caused the visits to be terminated because of arguments between the Plaintiff and the Defendant. It appears that the Defendant has elected to see the child perhaps only once since the DNA test results were obtained.
The Defendant indicates that he had doubts of his paternity while the Plaintiff was pregnant. Further, in April of 1994, the Defendant and Plaintiff appeared at Waterbury Probate Court as a result of the Plaintiff filing a petition to remove the Defendant's name from the child's legal name. (The birth certificate reflects the name "Tiffany C.-H."). The Plaintiff petitioned the Waterbury Probate Court to remove "H." from the child's name, which request was granted. The parties each testified that the Defendant asked the Probate Court judge for paternity testing, and that the Probate Court judge referred the Defendant to the Superior Court to accomplish same. This file reflects that the Defendant did not attempt to follow through in this regard until he filed the above-mentioned "Motion For DNA Genetic Testing" on June 20, 1995. Again, no action was taken on said motion. It does not appear that the Defendant was incarcerated between April, 1994 and June, 1995. However, he was incarcerated in August, 1995, and released in April, 1996. He then filed the above-mentioned "Motion for Modification to Decrease Child Support" dated May 29, 1996, but inexplicably failed to use that opportunity to also present a Motion to Open Judgment.
The Defendant argues that he should not be precluded from opening the judgment in this matter by the three-year deadline set forth in CT Page 16696 Connecticut General Statutes § 46b-172, as he claims he can prove fraud or material mistake of fact. The Defendant further argues that his Motion to Open Judgment should not be barred by "laches".
This court has previously noted: "These type of cases are difficult to address, given the many emotional and financial competing interests of all the parties. However, no issue is more important than the issue of what is in the best interests of the child, emotionally and financially. Perhaps the most profound legal decision that can be made during the life of a child is a determination (or subsequent termination) of paternity. The most obvious conclusion one draws from a review of Connecticut case law is that each such decision must be made on a case-by-case basis."Tamara D. v. Scott N., 15 S.M.D. ___ (October 29, 2001, Waterbury Superior Court, Colella, F.S.M.).
 I — FINALITY OF JUDGMENT
The Acknowledgment of Paternity, Affirmation and the Waiver of Rights forms referred to above were filed at Waterbury Superior Court on March 11, 1994, thereby having the same force and effect as a paternity judgment pursuant to Connecticut General Statutes § 46b-172 (a)(1).
Further, Connecticut General Statutes § 46b-172 (a)(2) states in part: ". . . the prior judgment as to paternity shall be res judicata as to that issue for all paternity acknowledgments filed with the court on or after March 1, 1981, but before July 1, 1997, and should not be reconsidered by the court unless the person seeking review of the acknowledgment petitions the superior court . . . within three years of such judgment."
Our courts favor finality in judicial decisions. Martinez v. Collins,
15 S.M.D. (January 7, 2001, Lifshitz, F.S.M.) (Citations omitted). Further, should there be any doubt regarding legislative intent on the subject of finality of paternity judgments, this court notes that Connecticut General Statutes § 46b-172 was amended by Public Act 97-7, thereby reducing the acknowledgment review period from three years to 60 days. It is, however, the 3-year period that applies in this case. TamaraD., supra.
Further, the Defendant has alleged neither that he was not properly advised of his rights nor that he did not understand the significance of waiving such rights at the time he executed the Acknowledgment of Paternity and the Waiver of Rights form attached thereto.
 II — FRAUD, DURESS OR MISTAKE CT Page 16697
Connecticut General Statutes § 46b-172 provides the court with the jurisdictional authority to consider opening this judgment only upon a showing of "fraud, duress or material mistake of fact which may include evidence that he is not the father, with the burden of proof upon the challenger".
A. Fraud
"The moving party bears a heavy burden of proof. Fraud must be proven by `clear and satisfactory evidence', a standard more exact than a fair preponderance of the evidence." (Citations omitted.) Martinez v. Collins,
15 S.M.D. ___ (January 21, 2001, Lifshitz, F.S.M.).
The moving party must prove the following elements of fraud: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon the false representation to his detriment. (Citations omitted.) Hemingwayv. Jones, 15 S.M.D. ___, 3 (February 16, 2001, Burt, F.S.M.); Martinezv. Collins, supra, 10 (Citations omitted).
Further, even if a party has presented sufficient evidence to prove fraud, the judgment shall be set aside only if the moving party is not barred by any of the following restrictions: "(1) There must have been no laches or unreasonable delay by the injured party after the fraud was discovered. (2) There must have been diligence in the original action, that is, diligence in trying to discover and expose the fraud. (3) There must be clear proof of the perjury or fraud. (4) There must be substantial likelihood that the result of the new trial will be different." Varley v. Varley, 180 Conn. 1, 4, 428 A.2d 317 (1980);McNealy v. Dancy, 13 S.M.D. 120.
"This Court as the trier of fact, is obligated to determine the credibility of witnesses and the weight to be given their testimony."Gatter v. Gatter, 15 S.M.D. ___ (2001, Lifshitz, F.S.M.); Griffin v.Nationwide Moving and Storage Co., 187 Conn. 405, 422, 446 A.2d 799
(1982); Riccio v. Abate, 176 Conn. 415, 418, 407 A.2d 105 (1979); Raiav. Topehius, 165 Conn. 231, 235, 332 A.2d 93 (1973); Cook v. Vieluch,32 Conn. App. 537, 549, 629 A.2d 1175, cert. denied, 228 Conn. 911,635 A.2d 1229 (1993). See Tamara D., supra.
The court has the right to accept part and disregard part of the testimony of any witness. Gatter v. Gatter, supra; Barrila v. Blake,190 Conn. 631, 639, 461 A.2d 1375 (1983); Rood v. Russo, 161 Conn. 1, 3,283 A.2d 220 (1971); Lynk v. Lynk, 11 S.M.D. 233, 241 (1997). The Plaintiff testified that she believed that Tiffany was conceived during CT Page 16698 March, 1993, while she was having exclusive relations with the Defendant. This court finds her testimony to be credible as to who she believed at that time to be the father of this child. This court finds the Plaintiff's claim that she was having exclusive sexual relations with the Defendant from February, 1993, to be less than credible for two reasons. Firstly, she in effect is asking this court to believe that her gestation period was at least 44 weeks. Secondly, she maintains this claim of exclusive sexual relations despite the paternity test results excluding the Defendant. However, this court finds that there is no clear and unequivocal evidence proving that the Plaintiff knew her affirmation to be false or that the Defendant was induced to sign the acknowledgment and waive his rights to the paternity testing.
B. Duress
The Defendant has offered no testimony or argument claiming that there was any duress involved in the events surrounding the Defendant's execution of the Acknowledgment of Paternity and Waiver of Rights forms.
C. Material Mistake of Fact
Prior to Public Act 97-7, this test was worded as "mutual mistake". Thus the revised language appears to allow the consideration of a unilateral mistake or mutual mistake. Unfortunately, there does not appear to be any Connecticut cases which clearly define the revised "material mistake" language. There is no bright light standard as to what constitutes a `mistake' sufficient to confer jurisdiction on a court to reopen a judgment. . . . The `mutual mistake' amendment . . . merely allows the court to consider evidence of non-paternity among other factors." McNealy v. Dancy, 13 S.M.D. 113, 122, also cited as Tiffany M.v. Walter D., 1999 Conn. Sup. 12793 (Lifshitz, F.S.M.). Further, this court could not find any enlightening legislative intent language as guidance. This court has not been presented with sufficient evidence to find "material mistake of fact" as a basis for opening this judgment beyond the presentation of the paternity test results.
 III — LACHES
This court has indicated above that the Defendant has not met his burden of proof as to fraud, duress or material mistake of fact. However, even if the Defendant had so met his burden of proof as to any of these elements, this court finds that "laches" is a bar to opening the judgment in this matter given the evidence presented and the totality of the circumstances. As stated in McNealy v. Dancy, supra, the opportunityto litigate (emphasis added) the issue of paternity was the key element in several cases in which an opening of paternity acknowledgment or CT Page 16699 judgment was denied. "Where a putative father signed the Affirmation and Waiver form and Acknowledgment of Paternity, and then participated in subsequent court proceedings, the court found that he has been `afforded ample opportunity to be heard in this case.' Even though the petition for review was filed within the three-year limitation period the court denied the request to open the judgment" (Citations omitted). In McNealy,
supra, Family Support Magistrate Lifshitz refers to his prior decision,Pullen v. Cox, 9 S.M.D. 134 (1995), wherein he denied a Motion to Open Paternity notwithstanding a genetic test that excluded the Defendant, citing "prior opportunity to litigate" as a significant factor. "At the very least, the Defendant has been an active and continuing participant in this litigation, had the benefit of counsel for a significant portion of the proceedings, and had ample opportunity to raise the paternity issue, if he so chose, within the statutory time, and incidentally at a time less prejudicial to the State and [the child]." Id., 144. This court finds the Defendant's failure to file a Motion to Open at the time he filed his Motion to Modify to Decrease Child Support on June 14, 1996, to be the crucial factor regarding this issue of "ample opportunity to litigate".
 IV — CHILD'S INTERESTS
A series of Connecticut cases in recent years has added the right of the child to know her true biological parentage as an additional issue to be weighed in these type of cases. See Johnson v. Domina, Superior Court, J.D. of Hartford, Docket No. FA88-0340848, 1998 Conn. Sup. 11005 (September 24, 1998); Lillibridge v. Lillibridge, Superior Court, J.D. of Hartford, Docket No. FA89-0356816 (October 21, 1998). As indicated above, the Plaintiff testified that she has "no idea" as to the last name of the paternity candidate she identifies as "Peter". Further, there was no testimony elicited from the Plaintiff to suggest that she knows where or how to find Peter. There was no testimony elicited from the Plaintiff to indicate whether she had any farther contact with Peter alter the January, 1993, liaison.
Haley Yeller provided a "Report of Attorney and Guardian Ad Litem for the Minor Child" dated November 8, 2000. Further, she was called as a witness by Defendant's counsel at this hearing. Attorney Yeller concludes that it would not be in Tiffany's best interests (financially or emotionally) to open the judgment of paternity against the Defendant.
The Defendant testified that he has pulled away from this child emotionally since learning of the paternity exclusion results. However, it is the view of this court that the issue of bonding between the child and father should be assessed from the child's point of view. Attorney Yeller indicates that Tiffany still refers to the Defendant as her CT Page 16700 "daddy". The information provided by Attorney Yeller confirms that the child still considers the Defendant to be her father. This court recently addressed similar circumstances: "As emotionally difficult as the exclusion of paternity may be upon the Defendant, the child is left to deal with this matter without the benefit of adult coping skills. The child is old enough to have bonded with the Defendant, but not old enough to understand what it means to be a `biological father' . . . It is impossible to know at this point the depth and duration of the emotional impact upon the child. Parenthetically, this court questions the wisdom of the Plaintiff informing the child of the genetic test results without first perhaps soliciting guidance from a child psychologist or similar expert." Tamara D., supra. Unfortunately, this court unable to offer the child any assistance in this regard (such as a referral to the Family Services Office).
 V — CONCLUSION
This court recognizes that the denial of the Defendant's Motion to Open Judgment may not be the perfect practical solution to the issues in this matter. Sadly, however, not every problem of the human condition lends itself to an ideal practical solution, however sound the legal decision may be. The circumstances of this case clearly do not point to a perfect practical solution. Clearly, the child does not "win", other than preserving the Defendant as her "father" from a legal standpoint, if the Defendant maintains his lack of participation in her life. The Defendant's testimony suggests that he is willing to maintain a relationship with this child, but only if he is not required to pay child support.
However, the Defendant declined genetic testing at his peril. It clearly is not in a child's best interest to allow a Defendant to revoke his paternity at any time during a child's life. The best interests of a child are prejudiced if a Defendant is allowed to shed the mantle of fatherhood and its intendant financial and emotional responsibilities.Gatling v. Gatling, 1990 Conn. Sup. 801 (Waterbury Superior Court, Harrigan, J.). This court is not seeking to punish the Defendant in anyway. It is merely applying Connecticut statutory law and case law to the facts of this case in arriving at a decision that appears at this point to be in the best interests of the child, alter carefully weighing all the relevant and competing factors.
Finally, in Tamara D., supra, this court also stated:
 "Clearly, one of the primary purposes of Connecticut General Statutes § 46b-172 is to maximize the use of genetic testing and thereby minimize the frequency CT Page 16701 of attempts to reopen paternity judgments, in turn minimizing the occurrences of emotional trauma upon the children of this state. There are some who advocate the notion that our legislature should mandate genetic testing in all births involving unwed mothers, given the simplicity, unobtrusiveness and low cost of such testing. This court is supportive of such legislation, not as an insult in any fashion to unwed mothers, but in an effort to avoid the potential emotional trauma inflicted upon a child as reflected in this case. The certainty of paternity would be in a child's best interests. Mandatory testing would eliminate the possibility of a named father waiving a genetic test for fear of offending and/or alienating the mother. This also would minimize the possibility of a Defendant pulling away from a child in later years due to lingering doubts, which doubts build to resentment. Many a Defendant appearing on a contempt motion has expressed to this court his doubts of paternity as an excuse for non-payment of support and/or lack of contact with the child."
This court reiterates its support of such legislation, so that in the not too distant future decisions as this will be a thing of the past.
The Defendant's Motion to Open Judgment dated March 27, 2000, is denied.
BY THE COURT
JOHN E. COLELLA Family Support Magistrate